

# NUMBER 13-17-00512-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

AURELIANO GARCIA D/B/A
A. GARCIA PRODUCE & TRUCKING,
LLC,                                                                      Appellant,

v.

HUMBERTO FLORES,                                                          Appellee.

On appeal from the County Court at Law No. 5
of Hidalgo County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion by Justice Tijerina

Appellant Aureliano Garcia d/b/a A. Garcia Produce & Trucking, LLC ("Garcia")

challenges the trial court's denial of his special appearance.[1] By two issues, Garcia contends that appellee Humberto Flores failed to (1) tender jurisdictional evidence to support that the trial court has jurisdiction over him personally and (2) show that Garcia waived his special appearance. We affirm.

## I.    BACKGROUND

According to Flores's petition, he entered a contract with Garcia to purchase a 2001 Kenworth T800 tractor rig and refrigerated trailer for $65,000. Flores alleged that Garcia "promised" to work with Flores by providing produce for Flores to haul from Garcia's Hidalgo County Business to Georgia, and Flores would pay for the rig and trailer by making such hauls. Flores claimed that Garcia "ceased, for no good reason, to give [Flores] loads to haul." Flores stated in his petition that he then asked Garcia to give him a nonnegotiable title to the rig, and Garcia refused. According to Flores, "Garcia immediately began efforts to seize and take the subject rig from [him]" even though Flores had made "substantial payments" to Garcia. Flores alleged that his debt to Garcia was only $10,000. Subsequently, Corzam, L.L.C., a wrecker and towing company (the "towing company"), "seized the subject rig from" Flores in Hidalgo County, Texas.

Flores sued Garcia for breach of contract, breach of duty of good faith and fair dealing, fraud, and intentional infliction of emotional distress. Flores also sued Garcia and the towing company for theft. Garcia filed a special appearance and motion to dismiss for lack of personal jurisdiction denying that he committed any acts in Texas that would bring him under the Texas long-arm statute and claiming that he resides in Georgia.

---

[1] Garcia is a Georgia resident with his principal place of business in Georgia. However, according to the pleadings, Garcia also owns a cold storage business in Hidalgo County, Texas, which is operated by A. Garcia Produce & Trucking, LLC (the "Hidalgo County Business").

Garcia attached a memorandum in support of his special appearance setting out his arguments regarding his lack of minimum contacts with Texas. Garcia then filed an answer (1) generally denying Flores's allegations, (2) asserting affirmative defenses, and (3) countersuing Flores for breach of contract. Flores filed a general denial and a response to Garcia's motion to dismiss for lack of personal jurisdiction.

After holding a hearing on Garcia's special appearance and motion to dismiss, the trial court denied both. This appeal followed.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

Texas courts have personal jurisdiction over a nonresident defendant only if it is authorized by the Texas long-arm statute, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042, which allows Texas courts to exercise personal jurisdiction over nonresident defendants who are doing business in Texas. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The Texas long-arm statute sets out several activities that constitute "doing business" in Texas; however, the list is not exclusive, and the long arm statute's "broad language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *Id.* (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Therefore, "the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

Under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, a Texas court has personal jurisdiction over a nonresident defendant when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and

3

substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *BMC Software Belg.*, 83 S.W.3d at 795; *see* U.S. CONST. amend. XIV, § 1. "The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

The plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident defendant within the provisions of the [Texas] long-arm statute." *BMC Software Belg.*, 83 S.W.3d at 793. Once this burden is satisfied, to challenge personal jurisdiction, the defendant must file a special appearance negating all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belg.*, 83 S.W.3d at 793; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.—Corpus Christi–Edinburg 2002, pet. dism'd w.o.j.).

Whether the trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belg.,* 83 S.W.3d at 794. Thus, we review the trial court's ruling on a special appearance de novo. *Id.* The trial court determines the special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. TEX. R. CIV. P. 120a(3).

If the trial court does not issue findings of fact and conclusions of law, we must imply all facts necessary to support the judgment if those facts are supported by the evidence, and we presume that the trial court resolved all factual disputes in favor of its

4

ruling. *BMC Software Belg.*, 83 S.W.3d at 795; *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002)). Any implied findings are not conclusive and may be challenged for legal and factual sufficiency if the appellate record contains the reporter's and clerk's records. *BMC Software Belg.*, 83 S.W.3d at 795.

## III.    PERSONAL JURISDICTION

Because Garcia does not challenge on appeal that Flores's pleadings contained allegations bringing Garcia within the provisions of the Texas long-arm statute, the burden is on Garcia to negate all pleaded jurisdictional bases of personal jurisdiction and, thereby, establish a violation of his due process rights. Thus, to have prevailed on his special appearance, Garcia must have established either that (1) he did not have minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities in Texas or (2) his potential liability did not arise from or was not substantially connected to those contacts. In other words, Garcia must show there was not a substantial connection between Garcia's contacts and the operative facts of the litigation. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Moki Mac River Expeditions*, 221 S.W.3d at 585; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226.

### A.    Minimum Contacts

A defendant must have sufficient minimum contacts with Texas to support the exercise of personal jurisdiction. *Burger King Corp.*, 471 U.S. at 475; *Michiana Easy*

5

*Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). The touchstone of minimum contacts is whether the nonresident defendant "purposefully availed" himself of the privilege of conducting business in Texas. *Burger King Corp.*, 471 U.S. at 475; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784. In determining whether purposeful availment has occurred, there are three considerations. *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785. First, we consider only the nonresident defendant's contacts with the forum state. *Id*. (quoting *Burger King Corp.*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'")). Second, we consider whether the contacts were purposeful and not "random, isolated, or fortuitous." *Id*. Finally, we consider whether the nonresident defendant sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id*.; *see Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). We analyze the defendant's contacts on a claim-by-claim basis unless all the claims arise from the same forum contacts. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150–51.

Minimum contacts may be found when the nonresident defendant purposefully avails himself of the privileges and benefits inherent in conducting business in the forum state. *Moki Mac River Expeditions*, 221 S.W.3d at 575 ("[A] defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." (quoting *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785)); *Michiana Livin' Country, Inc.*, 168 S.W.3d at 784 ("For half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'"); *see Burger King Corp.*, 471 U.S. at 474–75. Minimum contacts with the

6

forum state may establish either specific or general jurisdiction over the nonresident defendant. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414. There is specific jurisdiction over the nonresident defendant if the defendant purposefully directed his activities at residents of Texas and the litigation arose from or related to those contacts. *See Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 227. Specific jurisdiction exists if there is a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation. *Moki Mac River Expeditions*, 221 S.W.3d at 585. On the other hand, the forum state has general jurisdiction over the nonresident defendant if the defendant's contacts in the forum state are continuous and systematic. *BMC Software Belg.*, 83 S.W.3d at 796. General jurisdiction allows the forum state to exercise personal jurisdiction over the defendant "even if the cause of action did not arise from or relate to activities conducted within the forum state." *Id.*

Even if the nonresident defendant has purposefully availed himself of personal jurisdiction in Texas, we must also conclude that the defendant's liability arises from or is substantially connected to those contacts. *See Burger King Corp.*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226. Thus, we review the substantial connection between the operative facts of the litigation based on the claims and the defendant's contacts with Texas. *Retamco Operating, Inc.*, 278 S.W.3d at 340.

### 1. Operative Facts

Here, according to a liberal construction of Flores's pleadings, Garcia agreed to sell Flores a rig for $65,000 and promised that Flores could pay for the rig by hauling

7

produce from Garcia's business located in Hidalgo County.[2] Flores claimed that Garcia breached the contract when he stopped hiring him to haul produce and that Flores could no longer pay for the rig due to Garcia's breach. In addition, Flores alleged that Garcia committed fraud, breach of good faith and fair dealing, and intentional infliction of emotional distress by telling him that he would hire Flores to haul produce for his Texas business to pay for the rig knowing that he would then renege on the agreement and intending to "steal or defraud" Flores. Finally, Flores alleged that Garcia committed theft by hiring the towing company to take the rig without Flores's effective consent.

Garcia did not negate these allegations; thus, we take them as true in our analysis. In addition, we conclude that Flores's claims all arose from the same contacts Garcia had with Texas; thus, we will not analyze Flores's claims separately. *See Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150–51.

## 2. Discussion

Here, taking Flores's pleadings as true, Garcia chose to hire a Texas resident to haul produce in Texas for his Texas business so that Flores could purchase the rig from Garcia. And, Garcia decided to stop hiring Flores to haul produce, prevented Flores from acquiring a nonnegotiable title in order to pay for the remaining balance on the rig, and repossessed the rig when Flores was unable to pay for it. Accordingly, according to Flores's pleadings, neither Flores, nor any third party, unilaterally decided to enter the

---

[2] We note that at the special appearance hearing, the trial court admitted Garcia's exhibits, including, among other things, a copy of the signed purchase agreement that was signed in Georgia. *See Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 190 (Tex. App.—Dallas 2015, no pet.) ("[E]ven in instances where a contract was signed in another state, an out-of-state company with no physical ties to Texas still has minimum contacts with Texas when it is clear the company purposefully directed its activities toward Texas." (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 340 (Tex. 2009))). The purchase agreement does not mention how Flores was expected to pay for the rig. Flores did not allege that there was a written contract regarding how he would pay for the rig.

8

contract or commit the alleged torts. In addition, Garcia's contacts with Texas were not random or fortuitous as he allegedly fraudulently agreed to hire a Texas resident to perform contractual duties in Texas for the benefit of his Texas business and then breached that agreement and caused the rig to be repossessed. Lastly, by entering into the contract, Garcia sought to benefit his Texas business. *See Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 281 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("It is reasonable to subject a nonresident defendant to personal jurisdiction in Texas in connection with litigation arising from a contract specifically designed to benefit from the skills of a Texas resident who performs contractual obligations in Texas.").

Therefore, Garcia should have reasonably expected that litigation in Texas could arise from his decision to allow Flores, a Texas truck driver, to pay for the rig by hauling produce in Texas for the benefit of Garcia's Texas business and then reneging on that agreement and improperly taking the rig from Flores in Texas. *See Nogle & Black Aviation, Inc. v. Faveretto*, 290 S.W.3d 277, 283 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (finding it reasonable for the nonresident defendant to expect being sued in Texas when the nonresident defendant chose to hire a Texas engineer to perform work in Texas); *Citrin Holdings, LLC*, 305 S.W.3d at 281 (stating that the place of the contract's performance is an important consideration in our minimum contacts analysis and concluding that it is reasonable to subject a nonresident defendant to personal jurisdiction in Texas when the litigation stems from a contract specifically designed to benefit from skills of a Texas resident performing contractual obligations in Texas); *see also Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288–89 (5th Cir. 1978) (noting that "it is the place of performance rather than execution, consummation or delivery which should

9

govern the determination of jurisdiction" and holding that plaintiff's "unilateral partial performance" in Texas was insufficient to establish jurisdiction); *Retamco Operating, Inc.*, 278 S.W.3d at 340 (determining that nonresident defendants who sign a contact out-of-state with no physical ties to Texas had minimum contacts with Texas when it is clear that the defendant purposefully directed its activities towards Texas). Accordingly, we conclude that Garcia has purposefully availed himself of the privilege of conducting activities in Texas. Moreover, we conclude there is a substantial connection between the forum, Garcia's contacts to it, and the operative facts of the litigation, as the alleged contacts form the basis of Flores's claims. *See Retamco Operating, Inc.*, 278 S.W.3d at 340.

## B.  Fair Play and Substantial Justice

Next, Garcia argues that the exercise of personal jurisdiction over him offends notions of fair play and substantial justice because: he resides in Georgia; he was only involved in the underlying transaction as a representative of A. Garcia Produce & Trucking, LLC; the underlying transaction occurred in Georgia; he does not own the rig at issue; and Flores made all of his payments to a Georgia address.[3] Finally, Garcia states, "The severe burden to Mr. Garcia of defending a lawsuit in Texas, when he has no personal interest in the underlying transaction, outweighs any Texas interest presented by the Texas plaintiff, Mr. Flores."[4]

---

[3] The rig is owned by A. Garcia Produce & Trucking, LLC. However, in Texas any individual doing business under an assumed name may sue or be sued in its assumed or common name for the purpose of enforcing for or against it as substantive right. *See* TEX. R. CIV. P. 28 ("Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted.").

[4] Garcia did not make any of these arguments in his special appearance.

10

To defeat personal jurisdiction, Garcia had the burden of establishing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Citrin Holdings, LLC*, 305 S.W.3d at 279. Garcia must have presented a compelling case that the exercise of personal jurisdiction was unreasonable for any reason. *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 231 (quoting *Burger King*, 471 U.S. at 477); *Hoagland v. Butcher*, 396 S.W.3d 182, 196 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting the defendants' failure to provide argument in his special appearance regarding how the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice and holding that therefore the defendants failed to show that the trial court's exercise of personal jurisdiction over them would do so). "Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant purposefully has established minimum contacts with the forum state." *Moring v. Inspectorate Am. Corp.*, 529 S.W.3d 145, 156 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 231). We determine whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice by reviewing the following: (1) the burden on the defendant; (2) the interests in the forum state in adjudicating the dispute; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Hoagland*, 396 S.W.3d at 195; *Citrin Holdings, LLC*, 305 S.W.3d at 288 (citing *Burger King*, 471 U.S. at 476–77).

In his special appearance, Garcia did not address any of the above-listed factors

11

for the trial court to consider. Garcia did not explain why the trial court should have decided that these factors weigh in his favor or otherwise demonstrate how, after weighing these factors, the exercise of personal jurisdiction over him offends traditional notions of fair play and substantial justice. Thus, Garcia did not make a compelling showing that the exercise of personal jurisdiction over him would offend notions of fair play and substantial justice. Moreover, the state of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly disputes involving allegations that a defendant committed torts in whole or in part in Texas. *See Hoagland*, 396 S.W.3d at 196 (concluding that the defendant failed to make a compelling case that the exercise of personal jurisdiction offended notion of fair play and substantial justice by not analyzing this issue in their special appearance motion). We overrule Garcia's first issue.[5]

## IV. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA,
Justice

Delivered and filed the
26th day of September, 2019.

---

[5] By his second issue, Garcia contends that the trial court erred by concluding that he waived his special appearance by filing a motion to dismiss pursuant to Rule 91a. However, we need not address this issue as it is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

12