# IN THE SUPREME COURT OF TEXAS

══════════

No. 19-0263

══════════

BONSMARA NATURAL BEEF COMPANY, LLC AND
GEORGE CHAPMAN, INDIVIDUALLY, PETITIONERS,

V.

HART OF TEXAS CATTLE FEEDERS, LLC, JAMES MICHAEL HAYES, INDIVIDUALLY,
LYNN LANDRUM, INDIVIDUALLY, AND HENRY O. PICKETT II, INDIVIDUALLY,
RESPONDENTS

══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

══════════════════════════════

**Argued January 28, 2020**

JUSTICE BUSBY delivered the opinion of the Court, in which JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE BOYD, JUSTICE BLACKLOCK, and JUSTICE BLAND joined.

JUSTICE GREEN filed a dissenting opinion, in which CHIEF JUSTICE HECHT and JUSTICE DEVINE joined.

In this cattle-feeding dispute, the parties ask us to wrangle issues regarding the effect of forgoing an interlocutory appeal and the availability of their chosen forum for arbitration. "[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). The statutory exceptions generally provide that a person "may appeal from" certain types of interlocutory orders,

including an order denying a motion to compel arbitration. Does this language mean that if the losing party chooses not to take an interlocutory appeal from such an order, it forfeits the ability to challenge that order on appeal from a final judgment?

According to the cattle owner, the mere availability of an interlocutory appeal demonstrates that the losing party must appeal the order within twenty days of its issuance. Because the cattle feeder failed to appeal the order denying its motion to compel arbitration within that period, the owner contends the appellate court lacked jurisdiction to overturn the trial court's denial post-judgment.

This argument is incorrect: our rule has long been that "a party against whom an interlocutory [order] has been rendered will have his right of appeal when . . . the same is merged in a final judgment disposing of the whole case." *Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex. 1984). Even when a party actually pursues interlocutory review of an arbitration order by mandamus and relief is denied without comment on the merits, we have held that "the court of appeals has jurisdiction to review the order . . . [on] appeal" from a final judgment. *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007) (per curiam). As we explained in *Hernandez v. Ebrom*, nothing in the permissive language or context of our interlocutory appeal statutes changes this rule. 289 S.W.3d 316, 318–19 (Tex. 2009). We therefore hold that a party does not forfeit its right to challenge a ruling on appeal from a final judgment simply by opting not to pursue an interlocutory appeal of that ruling.

In opposing this holding, our dissenting colleagues invoke various policy considerations. Those considerations animate distinct legal doctrines that have nothing to do with the interlocutory appeal statute, such as mootness, estoppel, and waiver by conduct. Driving home this very point,

2

the dissent includes a lengthy discussion of waiving the right to arbitration by substantially invoking the litigation process. But the cattle owner has never asserted this type of waiver in any court, including ours. And not even the dissent maintains that waiver by litigation conduct is a doctrine that impacts the jurisdiction of our courts of appeals or illuminates what the words of the interlocutory appeal statute mean. The doctrine therefore has no place in our analysis of the cattle owner's issue.

On the merits, the cattle owner contends that the trial court properly denied the feeder's motion to compel arbitration, as the arbitrator is unavailable per its own rules and the parties' agreement does not permit arbitration with the cattle feeder's non-signatory owners. We disagree. First, the parties' designated forum has indicated its availability to arbitrate this dispute, and we defer to its opinion on this issue of procedural arbitrability. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002). Second, the parties' arbitration agreement does not preclude the use of direct-benefits estoppel to compel arbitration of the cattle owner's claims against the feeder's non-signatory owners. *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 304 (Tex. 2006). We therefore affirm the court of appeals' judgment compelling arbitration.

## BACKGROUND

This case concerns a custom cattle-feeding agreement between Bonsmara Natural Beef Co., LLC and Hart of Texas Cattle Feeders, LLC. In 1997, Bonsmara and its president, George Chapman, imported the first full-blooded Bonsmara cattle from Africa to the United States. Livestock research revealed that Bonsmara beef was lean, tender, and flavorful, and that its retail product yield was greater than that of some other breeds. To obtain a premium price for this beef,

3

Bonsmara endeavored to market the beef as "natural." It developed a protocol to ensure its cattle entered feed yards in conditions qualifying them as natural.

To finish and sell its natural beef, Bonsmara contracted with Castro County Feeders—now Hart of Texas Cattle Feeders.[1] The agreement required Hart to supply feed, vitamins, minerals, and medicine for the cattle at Hart's feed yard facilities and stipulated that disputes would be resolved through arbitration:

> Any dispute or controversy arising under, out of, or in connection with or in relation to this cattle feeding agreement and any amendment thereof, or the breach thereof, may, at the sole option and discretion of [Hart], be determined and settled by arbitration to be held in Amarillo, Texas, in accordance with the rules then applicable under the arbitration program of the Texas Cattle Feeders Association. If the controversy is decided by arbitration, any award rendered therein shall be final and binding on each of the parties hereto, and judgment may be entered thereon in the State Court of the State of Texas for the County of Potter.

The agreement was governed by Texas law and signed by Hart and Bonsmara, with Chapman as Bonsmara's guarantor.

Between 2010 and 2014, Bonsmara shipped over 12,500 cattle to Hart for finishing and sale. In 2015, the parties' relationship broke down. According to Bonsmara, cattle placed in Hart's care performed poorly, suffering higher than usual death rates and requiring antibiotic or similar medical treatment after becoming ill. Treated cattle no longer qualify as natural and cannot fetch a premium price. Bonsmara thus claimed it incurred "severe monetary losses."

Seeking to recover these losses, as well as exemplary damages and fees, Bonsmara and Chapman sued Hart and its owners James Michael Hayes, Lynn Landrum, and Henry O. Pickett II (collectively, the Hart defendants). Against Hart, Bonsmara and Chapman alleged breach of

---

[1] Bonsmara and Hart executed a 2012 agreement with the same terms.

contract and negligent feeding and care. Against all Hart defendants, they alleged fraud, negligent hiring or supervision, civil conspiracy, and unjust enrichment. Against the owners, they alleged various tort claims and sought to hold Hayes, Landrum, and Pickett personally responsible for Hart's conduct. Chapman also sought a declaratory judgment discharging him from liability as Bonsmara's guarantor.

The Hart defendants moved to dismiss the suit and compel arbitration, arguing that all of these claims were subject to the agreement's arbitration clause. In response, Bonsmara and Chapman contended that the arbitration agreement was unenforceable because it required arbitration in accordance with the rules of the Texas Cattle Feeders Association (TCFA) arbitration program, which allowed only TCFA members to arbitrate. Although Hart owners Landrum and Pickett were TCFA members, none of the agreement's signatories—Bonsmara, Chapman, and Hart—were members. Thus, according to Bonsmara and Chapman, the agreement's designated forum was unavailable.[2] The trial court denied the Hart defendants' motion to compel arbitration.

The Hart defendants did not challenge this ruling through an interlocutory appeal. Instead, after the deadline to file an interlocutory appeal had passed, they filed a mandamus petition asking the court of appeals to order the trial court to compel arbitration. The court of appeals denied relief, explaining that the Hart defendants could have pursued an interlocutory appeal—and therefore had an adequate remedy—but failed to do so. *In re Hart of Tex. Cattle Feeders, LLC*, No. 07-16-00194-CV, 2016 WL 3180436, at *1–2 (Tex. App.—Amarillo June 2, 2016, no pet.).

---

[2] The Bonsmara plaintiffs also argued that TCFA rules required disputing parties to agree to submit a dispute to arbitration and insisted there had been no such agreement here. This argument is not at issue in this Court.

5

After a jury trial on the merits, the trial court rendered judgment that the Hart defendants were jointly and severally liable to Bonsmara and Chapman for $366,445.70. The judgment also awarded Bonsmara and Chapman $227,272.25 for attorneys' fees incurred through trial plus additional contingent attorneys' fees in the event of an appeal. The Hart defendants appealed.

In the court of appeals, the Hart defendants argued that the trial court erred when it denied their motion to compel arbitration. 583 S.W.3d 705, 707 (Tex. App.—Amarillo 2019). The parties did not dispute the existence of the arbitration agreement between Bonsmara, Chapman, and Hart. *Id.* at 711. Rather, the Hart defendants asked the court to decide (1) whether the agreement was enforceable given TCFA's membership requirement; and (2) whether Hart owners Hayes, Landrum, and Pickett—as non-signatories—could compel Bonsmara and Chapman to arbitrate disputes related to the agreement. *Id.* at 712 & n.3. The court answered yes to both issues. *Id.* at 713.

As to the first issue, the court concluded the agreement was enforceable because it required arbitration in accordance with TCFA's rules, not that TCFA *conduct* the arbitration. *Id.* at 712 n.3. As to the second issue, the court held that Hayes, Landrum, and Pickett could compel Bonsmara and Chapman to arbitrate under the doctrine of direct-benefits estoppel. *Id.* at 712. Specifically, it reasoned that Bonsmara and Chapman could not "seek to hold [the Hart defendants] liable pursuant to duties imposed by an agreement containing an arbitration clause, while at the same time denying the applicability of that clause simply because the individual[s]" were non-signatories. *Id.* The court reversed the trial court's judgment for Bonsmara and Chapman and remanded, instructing the trial court to order the parties to arbitration. *Id.* at 713. Bonsmara and Chapman filed a petition for review, which we granted.

6

In this Court, Bonsmara and Chapman (collectively, Bonsmara) seek our review of three issues, which we reorder and consolidate into two. First, Bonsmara contends that the Hart defendants' failure to appeal the interlocutory order denying their motion to compel arbitration deprived the appellate court of jurisdiction to overturn that order on appeal from a final judgment. Second, if the order was appealable, Bonsmara contends that the court of appeals erred in reversing the judgment in its favor and remanding for arbitration of its claims because the parties' chosen forum is unavailable and they cannot be compelled to arbitrate elsewhere, nor can they be compelled to arbitrate with non-signatories. We begin by addressing Bonsmara's jurisdictional challenge.

## I. The court of appeals had jurisdiction to consider the trial court's denial of the Hart defendants' motion to compel arbitration.

Whether a court has jurisdiction is a question of law, which we review de novo. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). Statutes authorizing interlocutory appeals "are a narrow exception to the general rule" that "appellate courts generally only have jurisdiction over final judgments." *Id.* When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment and may be challenged by appealing that judgment. *E.g.*, *Roccaforte v. Jefferson County*, 341 S.W.3d 919, 924 (Tex. 2011); *Teer*, 664 S.W.2d at 704; *Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972).

Interlocutory appeal statutes give parties another option for challenging particular kinds of orders. Each of these statutes provides—in more or less the same words—that a person "may

7

appeal from" the specified order.[3]  The statute relevant here provides that "[i]n a matter subject to the Federal Arbitration Act . . . , a person may take an appeal . . . to the court of appeals from the [trial court's] . . . interlocutory order . . . under the same circumstances that an appeal . . . would be permitted" in federal court.  TEX. CIV. PRAC. & REM. CODE § 51.016; *see* 9 U.S.C. § 16 (listing appealable and non-appealable orders regarding arbitration and permitting interlocutory appeal of an order denying application to compel arbitration).[4]  Bonsmara's first issue requires us to consider the consequence of a party's failure to take such an interlocutory appeal.

### A.  Interlocutory appeal statutes do not alter the principle that orders merge into—and may be challenged on appeal from—a final judgment.

By granting Texas appellate courts additional jurisdiction to review the types of interlocutory orders these statutes identify, has the Legislature also limited our general appellate jurisdiction to review such orders after they merge into final judgments?[5]  Bonsmara argues that it has.  In Bonsmara's view, the Hart defendants had the right to pursue an interlocutory appeal from the trial court's order denying their motion to compel arbitration, but they did so more than two years too late by waiting to appeal until after final judgment.  The Hart defendants' failure to exercise that right, Bonsmara says, deprived the appellate court of jurisdiction to address the merits

---

[3] *See, e.g.*, TEX. CIV. PRAC. & REM. CODE §§ 15.003(b) (providing "an interlocutory appeal may be taken of" certain venue determinations), 27.008 (providing "the moving party may appeal" the denial of a motion to dismiss under the Texas Citizens Participation Act), 51.014 (providing "[a] person may appeal from an interlocutory order" that falls into one of fourteen categories).

[4] Similarly, for matters subject to the Texas General Arbitration Act, "[a] party may appeal a judgment or decree entered under this chapter or an order . . . denying an application to compel arbitration."  CIV. PRAC. & REM. CODE § 171.098(a)(1).

[5] *See GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 866 n.15 (Tex. App.—Austin 2008, no pet.) (framing this question).

of the trial court's order. Bonsmara first raised this argument in its motion for rehearing in the court of appeals, which explains why it is framed in jurisdictional terms.

We rejected this argument as to another type of order in *Hernandez v. Ebrom*, finding nothing in the interlocutory appeal statute's permissive text or context to indicate that the losing party waived his right to challenge the order after final judgment by failing to pursue an interlocutory appeal. 289 S.W.3d at 318–19 (construing CIV. PRAC. & REM. CODE § 51.014(a)(9)). We explained that in construing statutes, "[w]e give effect to legislative intent as it is expressed by the statute's language and the words used," including any definitions provided, "unless the context necessarily requires a different construction." *Id.* at 318.

We therefore focused on the statutory words "may appeal," observing that the Legislature has defined the word "may" as "creat[ing] discretionary authority or grant[ing] permission or a power." *Id.* (quoting TEX. GOV'T CODE § 311.016(1)). We did not "see in the [interlocutory appeal] statute either express language or a context" to indicate that the Legislature, by "*authoriz[ing]* . . . interlocutory appeals[,] . . . effectively *mandated* [them] by providing that if no appeal was taken, then the [losing party] waived the right to challenge the [order] under all circumstances." *Id.* at 319. In particular, we noted that the interlocutory appeal statute and a related statute did not contain a noncompliance penalty or otherwise "indicate[] there are consequences if an appeal from the interlocutory order is not pursued." *Id.*

Although the statute at issue here authorizes interlocutory appeals from a different type of order, it is exactly like the statute in *Hernandez* in all relevant respects. Section 51.016 also uses the permissive word "may," and nothing in the text of that section or related statutes indicates that a party's choice not to pursue an appeal from an interlocutory order has any consequences for the

9

longstanding jurisdictional principle that it may challenge the order on appeal from a final judgment.

We may not seek a different result by considering what unexpressed purposes, policy considerations, or interests the Legislature may have had in mind in authorizing interlocutory appeals of orders denying motions to compel arbitration. "Separation of powers demands that judge-interpreters be sticklers . . . . about not rewriting statutes under the guise of interpreting them." *BankDirect Capital Fin. v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017). We judges "are bound by the Legislature's prescribed means (legislative handiwork), not its presumed intent (judicial guesswork)." *Id.* at 86–87. Although policy considerations would be commonplace in deciding whether interlocutory review by mandamus is available,[6] they have no place in determining whether this statute alters our appellate jurisdiction on appeal from a final judgment.

Even if policy were relevant, strong policy considerations weigh against Bonsmara's proposed use-it-or-lose-it approach. The Legislature has determined that parties "may" choose to pursue early appeals from certain types of orders, and parties and their counsel making this choice must carefully weigh the expense and delay of an interlocutory appeal[7] against the likelihood that they will prevail on other grounds as the case proceeds in the trial court. A court cannot possibly know better than the parties which choice is best for them in each individual case. Yet Bonsmara would have us place a heavy thumb on the scale in favor of interlocutory appeals in all cases, resulting in significant expenditures of litigation time and resources that might have proven

---

[6] *E.g.*, *In re McAllen Med. Ctr.*, 275 S.W.3d 458, 464–69 (Tex. 2008) (orig. proceeding).

[7] *See Hernandez*, 289 S.W.3d at 322 (Jefferson, C.J., dissenting).

10

unnecessary had the parties been able to reserve their appellate options while litigating other issues.[8]

Moreover, Bonsmara and our dissenting colleagues would have us adopt the piecemeal approach of the *Hernandez* dissent, which argued that some subparts of section 51.014 will "contemplate[] [the] immediate exercise" of an appeal from certain types of orders so long as the judge can imagine an "underlying rationale" supporting that outcome,[9] while other subparts will not bar an appellate challenge to the orders at the end of the case—all in the very same statute that simply says a party "may appeal" on an interlocutory basis.[10] This approach would set traps for unwary parties and counsel, who have no textual cues to guide them in determining whether an interlocutory appeal will be their *only* option for challenging an order.[11]

For all these reasons, we "cannot conclude that by [granting us] limited . . . jurisdiction . . . to consider certain types of otherwise-unappealable interlocutory orders, the legislature intended correspondingly to limit our subject-matter jurisdiction over appeals from final judgments." *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 866 n.15 (Tex. App.—Austin 2008, no pet.). Any rulings made "if an interlocutory appeal is taken . . . may have law-of-the-case implications regarding the same

---

[8] *See Matherne v. Wilson*, 851 F.2d 752, 756 (5th Cir. 1988) ("There may be good reasons why a [party] may elect to not appeal before trial, and we see little value in a rule of waiver that would force unwanted appeals, many of which undoubtedly never would have been necessary."); *Hunter v. Dep't of Air Force Agency*, 846 F.2d 1314, 1316 (11th Cir. 1988) (per curiam) ("Making interlocutory appeals mandatory in this manner would turn the policy against piecemeal appeals on its head." (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 236 (5th Cir. Unit B 1982))).

[9] *Hernandez*, 289 S.W.3d at 325 (Jefferson, C.J., dissenting).

[10] *See, e.g., post* at __ (Green, J., dissenting) ("The answer to whether a party is foreclosed from challenging an interlocutory order on appeal after final judgment because it did not pursue an interlocutory appeal thus depends on the interest, right, or remedy that the interlocutory appeal protects.").

[11] *See Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 493 (3d Cir. 1997) ("[M]any times [a rule requiring immediate appeals of interlocutory orders] would lead to pointless forfeitures as litigants overlooked the possibility that a particular order might be [appealable]." (quoting *Exch. Nat'l Bank of Chi. v. Daniels*, 763 F.2d 286, 290 (7th Cir. 1985))).

issues in any subsequent appeals, but this is not a limitation on the appellate court's jurisdiction to consider such issues" after final judgment. *Id.*

Our holding in *Chambers v. O'Quinn* supports this conclusion. There, the losing party sought interlocutory review of an arbitration order by mandamus, which the court of appeals denied without discussing the merits. 242 S.W.3d at 31. When the losing party sought to challenge the order by appeal at the end of the case, the court of appeals concluded it lacked jurisdiction. *Id.* We disagreed, explaining that mandamus is discretionary "and its denial, without comment on the merits, cannot deprive another appellate court" of "jurisdiction to review the order . . . in this appeal." *Id.* at 32. Similarly, the statute at issue here gives a party discretion to pursue an interlocutory appeal of an arbitration order, and nothing in the statute or related provisions indicates that the party's choice not to file an interlocutory appeal deprives an appellate court of "jurisdiction to review [that] order . . . as part of the appeal of a final judgment in the case." *Id.* at 30.

**B.** **Other courts agree that interlocutory appeal statutes do not bar review on final judgment, and contrary decisions are rooted in non-statutory doctrines not at issue here.**

The great weight of authority from our courts of appeals supports applying our holdings in *Hernandez* and *Chambers* to other interlocutory appeal statutes as well. The only courts to consider the issue as to arbitration orders have held that they are reviewable on appeal from a final

12

judgment.[12] And this Court has indicated that the same conclusion applies to orders deciding pleas to the jurisdiction based on immunity.[13]

Another commonly used interlocutory appeal statute provides that parties "may appeal from" interlocutory orders on special appearances contesting personal jurisdiction. CIV. PRAC. & REM. CODE § 51.014(a)(7). Five out of six courts of appeals to consider the issue have held that a special appearance order also may be challenged on appeal after final judgment.[14] Texas appellate courts addressing other interlocutory appeal statutes using the word "may" agree that a party's failure to take an interlocutory appeal of an order does not bar it from challenging the order on appeal from a final judgment.[15] In many of these cases, the parties resisting this holding invoked

[12] *In re S.M.H.*, 523 S.W.3d 783, 788 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding failure to take interlocutory appeal of trial court's order vacating arbitration award under section 171.098(a) of the Civil Practice and Remedies Code did not bar appeal of vacatur order after final judgment); *In re Santander Consumer USA, Inc.*, 445 S.W.3d 216, 219–20 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (discussing Civil Practice and Remedies Code section 51.016 and noting *Hernandez* protects a party's right to assert complaint after final judgment even if interlocutory appeal not pursued).

[13] *See State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 325–26, 331 (Tex. 2002) (addressing immunity after final judgment despite party's failure to take interlocutory appeal allowed by Civil Practice and Remedies Code section 51.014(a)(8)); *see also Tex. Dep't of Transp. v. Flores*, 513 S.W.3d 826, 827 (Tex. App.—El Paso 2017, no pet.) (noting trial court's order denying plea to the jurisdiction merged into the final judgment and could be challenged on appeal thereafter).

[14] *See Lucas v. Ryan*, No. 02-18-00053-CV, 2019 WL 2635561, at *3 n.5 (Tex. App.—Fort Worth June 27, 2019, no pet.); *Moring v. Inspectorate Am. Corp.*, 529 S.W.3d 145, 150 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Southampton Ltd. v. Four Horsemen Auto Grp.*, No. 05-14-01415-CV, 2016 WL 3964731, at *3 (Tex. App.—Dallas July 20, 2016, no pet.); *DeWolf v. Kohler*, 452 S.W.3d 373, 383–84 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Brawley v. Huddleston*, No. 02-11-00358-CV, 2012 WL 6049013, at *3 (Tex. App.—Fort Worth Dec. 6, 2012, no pet.); *GJP, Inc.*, 251 S.W.3d at 866; *Canyon (Austl.) Pty., Ltd. v. Maersk Contractors, Pty., Ltd.*, No. 08-00-00248-CV, 2002 WL 997738, at *4 (Tex. App.—El Paso May 16, 2002, pet. denied). We disapprove the court of appeals' contrary holding in *Matis v. Golden*, 228 S.W.3d 301, 305 (Tex. App.—Waco 2007, no pet.).

[15] *See Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 868 (Tex. App.—Dallas 2014, no pet.) (holding denial of motion to dismiss under TCPA could be appealed after final judgment despite failure to take interlocutory appeal), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 466 nn.21–22 (Tex. 2017); *Nalle Plastics Family Ltd. P'ship v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 197 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied) (assuming without deciding party could appeal venue ruling after final judgment without taking interlocutory appeal available under Civil Practice and Remedies Code section 15.003(b)).

extra-statutory policy considerations concerning efficiency and the need for immediate resolution.[16] As explained above, however, those considerations cannot override the statutory text.

The federal court system also has statutes, rules, and judicial decisions that permit interlocutory appeals of certain orders. *E.g.*, 28 U.S.C. § 1292; FED. R. CIV. P. 23(f); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106–07 (2009); *id.* at 114–16 (Thomas, J., concurring in part). Consistent with our holding today, federal courts regard it as "clear that parties are not required to file an interlocutory appeal; rather, a party may forgo an interlocutory appeal and present the issue to [the] court [of appeals] after final judgment." *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 796 (6th Cir. 1998).[17] In particular, "federal courts have concluded that a party's failure to seek interlocutory review of an order granting or denying class certification does not bar the same complaint on final judgment." *Hernandez*, 289 S.W.3d at 327 (Jefferson, C.J., dissenting) (collecting cases). Federal courts have reached the same conclusion regarding review of orders concerning immunity,[18] injunctive relief,[19] and many other issues.[20]

---

[16] *See Moring*, 529 S.W.3d at 150; *Southampton*, 2016 WL 3964731, at *3; *DeWolf*, 452 S.W.3d at 383; *Brawley*, 2012 WL 6049013, at *3; *Matis*, 228 S.W.3d at 305.

[17] *See* 19 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 203.32 (3d ed. 2012) ("If a district court enters an interlocutory order that could be appealed under § 1292(b) but is not . . . , the issues decided in the order are not foreclosed but may be reviewed later on appeal from the final judgment."); 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2962 (2002) (explaining that "[s]ection 1292(a)(1) merely permits an interlocutory appeal; a party does not waive any rights [to appeal interlocutory orders at the time of final judgment] by failing to seek immediate review").

[18] *See, e.g.*, *Pearson v. Ramos*, 237 F.3d 881, 883 (7th Cir. 2001); *Ernst*, 108 F.3d at 492–93; *Matherne*, 851 F.2d at 756.

[19] *See, e.g.*, *Sierra Club v. Robertson*, 28 F.3d 753, 756 n.3 (8th Cir. 1994); *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 608 (7th Cir. 1993).

[20] *See, e.g.*, *Brownlee v. DynCorp*, 349 F.3d 1343, 1347–49 (Fed. Cir. 2003); *Hutchinson v. Pfeil*, 105 F.3d 566, 571 (10th Cir. 1997); *Dad's Root Beer Co. v. Doc's Beverages*, 193 F.2d 77, 78 n.1 (2d Cir. 1951); *Bingham Pump Co. v. Edwards*, 118 F.2d 338, 339 (9th Cir. 1941); *Victor Talking Mach. Co. v. George*, 105 F.2d 697, 698–99 (3d Cir. 1939) ("The [interlocutory appeal] statute . . . does not require an aggrieved party to take such an appeal in order to protect his rights, and, where it is not taken, does not impair or abridge in any way the previously existing right upon appeal from the final decree to challenge the validity of the prior interlocutory decree.").

We recognize, as we did in *Hernandez*, that interlocutory appeals from certain types of orders may prove to be the only opportunity for appellate review because doctrines entirely separate from the interlocutory appeal statutes can prevent those orders from being challenged on appeal from a final judgment.[21] Doctrines such as mootness, estoppel, and waiver by conduct embody the very policy considerations that Bonsmara and the dissent would have us consider here: need for immediate resolution and conservation of judicial and party resources. Because those doctrines already do the work of addressing such policy concerns in appropriate cases, there is no need to abandon our ordinary approach to statutory interpretation and do violence to the language of the interlocutory appeal statute so that it will bar an appeal from a final judgment.

We made this point in *Hernandez* by distinguishing *Richards v. Mena*, 820 S.W.2d 372 (Tex. 1991), and *Bayoud v. Bayoud*, 797 S.W.2d 304 (Tex. App.—Dallas 1990, writ denied). Those cases involved temporary injunctions, which can be the subject of interlocutory appeals but not of appeals from final judgments. As we explained, the reason for barring appeals at the end of the case is not that the "Legislature effectively *mandated* interlocutory appeals" by statute, but that "[a]ppeals of some interlocutory orders"—such as temporary injunctions—"become moot because the orders have been rendered moot by subsequent orders." *Hernandez*, 289 S.W.3d at 319.

Similarly, the reasons that courts have held orders appointing receivers are not appealable at the end of a case have nothing to do with the Legislature's choice to authorize interlocutory appeals of such orders. Rather, those holdings are rooted in principles of estoppel—the reliance

---

[21] The "flaws" the *Hernandez* dissent perceived in the Court's holding that the statutory term "may" means a party is "not required to appeal an interlocutory order" and "may postpone his complaint until the ruling merges with the final judgment" are resolved by understanding that these doctrines operate separately from the interlocutory appeal statutes. *See* 289 S.W.3d at 323 (Jefferson, C.J., dissenting).

15

of third parties who dealt with the receiver in good faith—and in our holding that orders resolving discrete issues in receivership proceedings are considered final and therefore must be appealed immediately, before the case concludes. *See, e.g.*, *Huston v. FDIC*, 800 S.W.2d 845, 848 (Tex. 1990); *Gibson v. Cuellar*, 440 S.W.3d 150, 154–55 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Sclafani v. Sclafani*, 870 S.W.2d 608, 611 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

Arbitration orders follow the same pattern. The dissent illustrates this very point when it contends that Hart waived arbitration by substantially invoking the litigation process. *Post* at __. This waiver doctrine does not specifically target appeals, nor does it rely on the statute authorizing interlocutory appeals of arbitration orders. Rather, it provides that "a party waives an arbitration clause by substantially invoking the [litigation] process to the other party's detriment or prejudice" before moving for an order compelling arbitration. *Perry Homes v. Cull*, 258 S.W.3d 589–90 (Tex. 2008).

For this reason, the dissent's analysis of whether Hart waived the arbitration clause by its litigation conduct does not address the question Bonsmara asks us to decide: whether the interlocutory appeal statute stripped the court of appeals of jurisdiction to review the arbitration order on appeal from the final judgment. The doctrine of waiver by litigation conduct neither impacts the jurisdiction of our courts of appeals nor illuminates what the words of the interlocutory appeal statute mean. As explained above, by granting appellate courts limited jurisdiction over appeals from interlocutory orders, the Legislature did not restrict appellate jurisdiction over appeals from final judgments and the orders merged therein.

16

Moreover, Bonsmara has never asserted in any court that Hart's motion to compel arbitration—filed only two months after this suit—should be denied (or that denial affirmed) on the ground that Hart waived its right to arbitration by substantially invoking the litigation process to Bonsmara's detriment. Nor does the dissent identify any authority for its *sua sponte* position that a party's actions after it moves to compel arbitration unsuccessfully are relevant to a waiver-by-conduct analysis.[22] Bonsmara's only non-jurisdictional arguments against arbitration have always been that the arbitrator is unavailable and the arbitration agreement is inapplicable to certain parties, and we address those arguments below.

The dissent also contends that our decision is inconsistent with the Court's recognition in *Hernandez* that a defendant could not ask an appellate court to order dismissal based on an inadequate expert report under Civil Practice and Remedies Code section 74.351 after losing at trial. *Post* at __ (Green, J., dissenting). But the reason we gave in *Hernandez* was unique to the structure of that section and does not apply here. Under section 74.351, a court uses an expert report on standard of care, breach, and causation to decide whether a plaintiff's claim should be dismissed as unsupported early in the case; the report cannot be admitted as evidence at trial. *See* CIV. PRAC. & REM. CODE § 74.351(b), (k). If the plaintiff later prevails at trial based on "evidence of the appropriate standard of care . . . , the defendant's breach of that standard, and a causal relationship between the breach and the plaintiff's damages," then that evidence supports the

---

[22] From that point forward, the party must adhere to the trial court's order—as it must all interlocutory orders—whether it agrees with the order or not. Having obtained an adverse ruling, the party's complaint is preserved for appellate review. TEX. R. APP. P. 33.1; *see also, e.g.*, *Lucas*, 2019 WL 2635561, at *2–10 (holding personal-jurisdiction challenge could be raised after final judgment where party obtained adverse ruling on special-appearance motion); *GJP, Inc.*, 251 S.W.3d at 865–83 (same). It is surely not the case that measures such as disobedience to the order, repetitious motions to reconsider, or abstention from putting on a case are necessary to avoid waiver. If simply adhering to an adverse order while continuing to litigate waived review of that order on appeal from a final judgment, there would be few orders left to review.

17

judgment. *Hernandez*, 289 S.W.3d at 321. Post-judgment dismissal because an earlier report inadequately addressed those same elements of the claim would be "nonsensical." *Id.*

But in this case, the issue on appeal concerns who is the proper decisionmaker for a claim, not whether the decision made on that claim was correct on the merits. The trial court decided the decisionmaker issue two months into the case by denying Hart's motion to compel arbitration. The parties introduced no evidence at trial about whether an arbitrator was the proper decisionmaker, and the jury rightly was not asked to decide that issue. Thus, the verdict provides no support for the trial court's ruling on the motion to compel and cannot preclude review of that ruling. We therefore disagree with the dissent's position that the right to arbitration becomes moot once the parties' dispute is resolved. *Post* at __.

Furthermore, in enacting the Federal Arbitration Act (FAA), Congress recognized "the fundamental principle that arbitration is a matter of contract" and required "courts [to] place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted); *accord Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) ("The primary purpose of the [FAA] is to require the courts to compel arbitration when the parties have so provided in their contract . . . ."). The FAA's provisions for holding parties to their agreement do not lose their force simply because a motion to compel arbitration has been denied and final judgment reached.[23]

---

[23] The post-judgment enforcement of contractual liquidated damages clauses provides a useful analogy. Like an arbitration agreement, a liquidated damages clause is a contractual device that parties use to determine their rights and liabilities in the event of a dispute. *See Atrium Med. Ctr., LP v. Hous. Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020). And, like an arbitration agreement, a liquidated damages clause is generally as enforceable as any other contractual provision. *Kothe & R.C. Taylor Tr.*, 280 U.S. 224, 226 (1930); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex. 2005). Yet appellate courts routinely entertain post-judgment arguments that a trial court erroneously failed to apply a liquidated damages provision even though a fact-finder has awarded a higher amount of damages without reference to that provision. *See, e.g.*, *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 62 (Tex. 2014); *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 592 S.W.2d 340, 341–43 (Tex. 1979).

For these reasons, we hold that the court of appeals had jurisdiction to consider the Hart defendants' appeal challenging the trial court's arbitration order as merged into the final judgment, and the Hart defendants did not forfeit this challenge by choosing not to pursue an interlocutory appeal of that order.

## II. The court of appeals did not err in ordering arbitration.

Because the court of appeals had jurisdiction to review the trial court's denial of the motion to compel arbitration, we next consider whether the court of appeals erred in reversing the judgment in Bonsmara's favor and remanding for arbitration. Bonsmara raises two arguments in support of its position that the trial court correctly denied the motion to compel, and we address each in turn.

### A. The arbitration agreement is enforceable because Bonsmara has not shown that the arbitrator determined its forum is unavailable.

Bonsmara first argues that the arbitration agreement is unenforceable because the parties' chosen forum is unavailable per the forum's rules and arbitration cannot proceed elsewhere. Whether parties have committed their disputes to arbitration is a gateway matter for the court to decide and is "controlled by state law governing 'the validity, revocability, and enforceability of contracts generally.'" *Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 631 & n.12 (Tex. 2018) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). A party seeking to compel arbitration must first establish that a valid arbitration agreement exists and that the claims are within the agreement's scope. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding).

---

Because the FAA places arbitration agreements on equal footing with liquidated damages clauses, the same approach is warranted here.

19

Here, the parties do not dispute that the arbitration agreement signed by Chapman, Bonsmara, and Hart is valid. Nor do they dispute that it designates TCFA as the preferred arbitral forum. Thus, "the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Under the parties' agreement, Hart may have any dispute settled by arbitration "in accordance with the rules then applicable under the arbitration program of the Texas Cattle Feeders Association." In turn, TCFA's arbitration rules provide that "[a]ny member of the Association may arbitrate any cattle feeding dispute agreed to by the parties . . . and accepted for arbitration by the Arbitration Committee."

Bonsmara, Chapman, and Hart are not TCFA members. Bonsmara therefore contends that TCFA is unavailable to arbitrate the dispute per its rules. Because the parties' agreement selected TCFA as the exclusive arbitration forum, Bonsmara maintains, the court of appeals erred in holding that another arbitrator could hear their dispute; TCFA's unavailability renders the agreement altogether unenforceable.

The Hart defendants disagree. In their view, the agreement is enforceable because TCFA is indeed available, as shown by affidavit testimony from TCFA's President and CEO that TCFA is "willing and available to arbitrate" the matter. Landrum and Pickett's membership in TCFA supports the availability of the forum, they contend, and TCFA's availability renders Bonsmara's exclusive-forum arguments irrelevant.

We have previously acknowledged the distinction between questions of "substantive" and "procedural" arbitrability. *G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 520 (Tex. 2015). The availability of an arbitral forum is a matter of procedural arbitrability, which

courts must allow arbitrators to decide. *See id.* at 520–21 (explaining that procedural arbitrability questions concern prerequisites "and other conditions precedent to an obligation to arbitrate"); *Howsam*, 537 U.S. at 85. As the Supreme Court of the United States has observed, "parties to an arbitration contract would normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters." *Howsam*, 537 U.S. at 86. Whether TCFA is available to arbitrate per its rules is precisely the sort of forum-specific procedural gateway matter this statement contemplates.

Our conclusion that forum availability is a question of procedural arbitrability is consistent with several federal decisions.[24] In each case, the court deferred to the arbitrator to determine its availability. *See Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1348 (11th Cir. 2014) (court deferred to the parties' preferred arbitrator when it stated it would not arbitrate dispute); *Reddam v. KPMG LLP*, 457 F.3d 1054, 1057 (9th Cir. 2006) (same), *abrogated on other grounds by Atl. Nat'l Tr. LLC v. Mt. Hawley Ins.*, 621 F.3d 931, 940 (9th Cir. 2010); *In re Salomon Inc. S'holders Derivative Litig.*, 68 F.3d 554, 556–57 (2d Cir. 1995) (same).

Here, TCFA has indicated that arbitration under its rules is available. TCFA's President and CEO provided testimony that "[b]ecause Landrum and Pickett are TCFA members, and because the parties to the contract agreed to submit their disputes to TCFA arbitration, TCFA is willing and available to arbitrate this matter should the Court compel the parties to arbitration." As the availability of an arbitral forum is a matter of procedural arbitrability for TCFA to decide, we defer to TCFA's opinion on this matter. *See Howsam*, 537 U.S. at 85; *G.T. Leach*, 458 S.W.3d

---

[24] *See G.T. Leach*, 458 S.W.3d at 522 & n.18 (noting its characterization of arbitrability issue as procedural rather than substantive was consistent with federal decisions).

at 520–21; *Inetianbor*, 768 F.3d at 1348; *Reddam*, 457 F.3d at 1057; *Salomon*, 68 F.3d at 556–57. Whether this opinion applies TCFA's rules correctly is not ours to review: TCFA's own arbitration committee and appeal committee may address such matters.

*Galey v. World Marketing Alliance*, 510 F.3d 529 (5th Cir. 2007)—in which the Fifth Circuit itself determined a forum's availability—does not require a different result: *Galey* is quite literally the exception, not the rule. When procedural arbitrability matters are at issue, "a court [can] deny arbitration *only* if it [can] confidently be said not only that a claim was strictly 'procedural' . . . but also that it should operate to bar arbitration altogether." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557–58 (1964) (emphasis added). The Fifth Circuit has "interpreted this rare exception to mean that a court will not order arbitration if 'no rational mind' could question [(1)] that the parties intended for a procedural provision to preclude arbitration *and* [(2)] that breach of the procedural requirement was clear." *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distribution, Inc.*, 331 F.3d 485, 488 (5th Cir. 2003) (emphasis added) (cleaned up).

In *Galey*, the court held that parties could not be compelled to arbitrate because their chosen forum was unavailable. *Galey*, 510 F.3d at 533–34. Though the court did not mention *John Wiley*'s exception, its requirements were met. First, the parties in *Galey* intended for a procedural provision to preclude arbitration if unsatisfied. *See John Wiley*, 376 U.S. at 557–58. Namely, the parties' designated forum—the National Association of Securities Dealers (NASD)—had a rule providing it would not arbitrate disputes involving NASD non-members. *Galey*, 510 F.3d at 531. Examining the policy statement behind the rule, the court concluded the rule "serve[d] a critical purpose" and was "an essential term of the arbitration agreement at issue." *Id.* at 533. Second,

22

breach of that procedural requirement was clear: undisputed evidence showed a party to the dispute was an NASD non-member. *Id.* at 531; *John Wiley*, 376 U.S. at 557–58. As nothing in *Galey* indicated arbitration could be permitted despite this provision and its breach, "no rational mind" could question that arbitration should not proceed. *See John Wiley*, 376 U.S. at 557–58; *Galey*, 510 F.3d at 533–34; *Albertson's*, 331 F.3d at 488.

This case is different. Here, we cannot say no rational mind could question that the parties intended TCFA's membership requirement to preclude arbitration altogether if unmet. Bonsmara has presented no evidence indicating TCFA's membership rule serves a critical purpose. *Cf. Galey*, 510 F.3d at 533 (explaining "it is apparent that [NASD's membership rule] was adopted to serve [the] critical purpose" of protecting customers from arbitration award non-payment). Likewise, Bonsmara has presented little evidence that the parties intended arbitration before TCFA—as opposed to arbitration generally—to be an "essential term" of the agreement, such that the unavailability of TCFA arbitration would preclude arbitration altogether. *Cf. id.* The terms of the parties' agreement here fall far short of the type of contract language that courts have held makes the forum designated for arbitration an essential term.[25]

---

[25] Here, the agreement provides that disputes "may . . . be determined and settled . . . in accordance with the rules then applicable under the arbitration program of the Texas Cattle Feeders Association," and it does not reference TCFA elsewhere. *Cf. Flagg v. First Premier Bank*, 644 F. App'x 893, 895 (11th Cir. 2016) (per curiam) (forum essential where agreement provided arbitration "shall" be resolved "by and under the Code of Procedure of the National Arbitration Forum"); *Inetianbor*, 768 F.3d at 1351 (forum essential where agreement provided arbitration "shall be conducted by the Cheyenne River Sioux Tribal Nation" and mentioned Tribe throughout agreement); *Ranzy v. Tijerina*, 393 F. App'x 174, 175 (5th Cir. 2010) (per curiam) (forum essential where agreement provided arbitration "shall" be resolved "by and under the Code of Procedure of the National Arbitration Forum" and mentioned NAF thrice thereafter); *Galey*, 510 F.3d at 531 (forum essential where agreement provided arbitration "shall be settled . . . in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. (NASD)" and "shall" follow NASD's arbitration committee procedures).

Because the first prong of *John Wiley*'s exception is unmet here, we need not address the second. We therefore decline to opine on TCFA's availability to arbitrate; that forum has spoken for itself. *John Wiley*, 376 U.S. at 557–58; *Albertson's*, 331 F.3d at 490 ("[C]ourts should not decide questions of procedural arbitrability unless a rational mind could not possibly rule for the party seeking arbitration.").

When the forum the parties designated is available, courts should hold parties to their bargain and require arbitration there, just as courts enforce other contractual provisions. *See Luckie v. Smith Barney, Harris Upham & Co.*, 999 F.2d 509, 510 (11th Cir. 1993) (per curiam) (parties required to arbitrate before chosen forum where evidence did not indicate designated forum was unavailable); *Roney & Co. v. Goren*, 875 F.2d 1218, 1220, 1223 (6th Cir. 1989) (same). Because evidence shows TCFA is available to arbitrate this dispute, we hold the agreement is enforceable.

## B. The arbitration clause's language does not foreclose the application of direct-benefits estoppel.

Bonsmara next contends that the agreement to arbitrate cannot apply to its claims against non-signatories Hayes, Landrum, and Pickett, Hart's owners. "Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms." *Jody James Farms*, 547 S.W.3d at 633. Yet Texas law has "long recognized that nonparties may be bound to a contract under various legal principles." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005). Thus, "[a] person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others." *Meyer*, 211 S.W.3d at 304.

"In particular, a signatory plaintiff who seeks to derive a 'direct benefit' from a contract with an arbitration clause may be equitably estopped from refusing arbitration." *Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 442 (Tex. App.—Houston [14th Dist.]

24

2015, no pet.); *see G.T. Leach*, 458 S.W.3d at 527. The court of appeals concluded that Hayes, Landrum, and Pickett could compel Bonsmara to arbitrate its claims under this doctrine of direct-benefits estoppel.

Bonsmara does not challenge the court of appeals' conclusion that the requirements of direct-benefits estoppel were met here.[26] Rather, Bonsmara argues the language of the arbitration agreement precludes courts from considering doctrines that permit non-signatories to compel arbitration. Bonsmara maintains that this agreement's language allows arbitration only by signatories who are also members of TCFA; thus, looking to direct-benefits estoppel would extend arbitration impermissibly. Bonsmara relies on our decision in *Meyer v. WMCO-GP*, which recognized that parties may draft their agreements to limit the application of estoppel. *See* 211 S.W.3d at 306.

Hayes, Landrum, and Pickett respond that the court of appeals properly considered direct-benefits estoppel because the language of this agreement is broad, encompassing any dispute related to the agreement. In their view, *Meyer* provides no support for Bonsmara. We agree.

Bonsmara's assertion that direct-benefits estoppel is inapplicable simply because it would require arbitration with non-signatories is a non-starter. The point of direct-benefits estoppel is to compel arbitration with non-signatories. *See Weekley Homes*, 180 S.W.3d at 131. Although Bonsmara is correct that parties may draft their arbitration agreements to limit estoppel, the parties' agreement lacks such limiting language here. The arbitration clause provides that "any dispute or

---

[26] Bonsmara also argues Hayes, Landrum, and Pickett waived direct-benefits estoppel by failing to raise the doctrine below. We disagree. Before the trial court and court of appeals, the Hart defendants argued arbitration was appropriate because the claims asserted by Bonsmara arose out of the agreement and Bonsmara should not avoid arbitration after receiving the agreement's economic benefits. This statement was "sufficiently specific[] to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A).

25

controversy arising under, out of, or in connection with or in relation to this cattle feeding agreement" may be resolved through arbitration. This language is no more restrictive than the arbitration clause in *Meyer*, which we concluded did not preclude the use of estoppel to require arbitration with non-signatories. 211 S.W.3d at 306–08. As Bonsmara has not challenged the court of appeals' holding that the requirements of direct-benefits estoppel are met here, we do not review that holding.

## CONCLUSION

For these reasons, we overrule the issues raised by Bonsmara and affirm the judgment of the court of appeals.

_____
J. Brett Busby
Justice


**OPINION DELIVERED:** June 26, 2020