**Affirmed and Opinion filed July 25, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00898-CV

**SCOTTY MORING, Appellant**

**V.**

**INSPECTORATE AMERICA CORPORATION, Appellee**

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2016-26355**

## O P I N I O N

In this appeal of a special-appearance denial, we address personal jurisdiction in the context of allegations that a non-resident former employee wrongfully acquired, used, or transmitted alleged confidential information as part of a scheme to solicit and steal a Texas company's Texas-based customers. The Texas company alleges that the former employee took the information while working in its Louisiana office, went to work for a competitor in Louisiana, and then used the ill-gotten information to compete with the company in Texas.

Though the alleged theft occurred in Louisiana, the Texas company alleges the former employee solicited business from Texas customers using the stolen information and later performed work for those customers in Texas. We affirm the trial court's denial of the employee's special appearance.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Scotty Moring was working in Louisiana for Waterdraws, LLC, in 2012, when the company's owner Robert LeJeune sold the company's assets to Inspectorate America Corporation. LeJeune, Moring, and other employees then began working for Inspectorate. As a condition of his continued employment, Moring signed a document entitled, "Employee Invention Assignment and Confidentiality Agreement" in which he agreed not to disclose to anyone Inspectorate's confidential information and not to remove, during employment or upon termination of employment, any records that contain confidential information. The agreement defines "confidential information" broadly to encompass strategic information. Strategic information includes "business strategies, pricing, billing information, actual or potential customer lists, contracts, contract terms and conditions, sale lists, process descriptions, financial data, marketing plans . . . trade secrets" as well as other items.

*Moring's Employment with Inspectorate*

Between 2012 and 2014, Inspectorate based Moring out of its Houston, Texas office. Moring prepared bids and quotes that Inspectorate used to get work from Texas customers. During that time, Moring also performed waterdraw calibrations, pipe prover inspections, pipe prover rebuilds, and small volume rebuilds for customers located in Texas. These tasks required Moring's physical presence in Texas. Moring then moved back to Louisiana, where he continued working for Inspectorate until 2015.

## New Employment with Intertek

In 2015, LeJeune, Moring, and at least three other employees terminated their employment with Inspectorate and began working for Inspectorate's competitor, Intertek USA, Inc. Inspectorate alleges that before he left, Moring took confidential information, including customer lists and base pricing.

While working for Intertek, Moring completed waterdraw calibrations, pipe prover calibrations, and pipe prover rebuilds for Texas customers. Moring also generated quotes and bids for customers. Many of the Texas customers for whom Moring was performing work and generating bids were the same customers for whom Moring had completed work on Inspectorate's behalf.

## Inspectorate's Claims

Inspectorate filed suit against Intertek, LeJeune, Moring, and the other employees who left Inspectorate to go work for Intertek, asserting a variety of claims. Against Moring, Inspectorate asserted breach of contract, misappropriation of trade secrets and confidential information, breach of fiduciary duty, tortious interference with existing contracts and prospective business relationships, civil conspiracy, unjust enrichment, and unfair competition.

## Special Appearances

LeJeune, Moring, and the other employees (Rory Quebedeaux, Kenneth Soileau, and Curt Bowers) filed a special appearance that they later amended. In the First Amended Special Appearance, the movants asserted that they were not subject to suit in Texas. Moring filed an affidavit in which he averred that he is a Louisiana resident, employed in Louisiana. Moring stated that he worked at an Inspectorate office in Texas between 2012 and 2014, but that he returned to Louisiana and was working in Louisiana at the time of the alleged conduct that is

the subject of Inspectorate's claims. Inspectorate nonsuited its claims against two of the employees (Quebedeaux and Soileau).

In its response to the First Amended Special Appearance, Inspectorate asserted that all of the individual defendants purposefully availed themselves of the privilege of conducting business in Texas by directing marketing efforts into Texas in the hope of soliciting sales and performing the same services for Texas customers on behalf of Intertek as they had done for those customers on behalf of Inspectorate.

The trial court granted the special appearances as to Moring and Bowers and denied LeJeune's special appearance. Inspectorate moved for reconsideration, arguing that Moring's attempt to exploit business opportunities in Texas constituted purposeful availment. Specifically, Inspectorate alleged that Moring misappropriated confidential information and used it as part of a scheme to solicit and steal the Texas company's Texas-based customers. Inspectorate argued that liability rests on whether Moring wrongfully acquired, used, or transmitted the alleged trade secrets. The trial court granted rehearing as to Moring and denied rehearing as to Bowers. Moring now appeals the trial court's denial of his special appearance.

### ISSUES AND ANALYSIS

Moring raises two appellate issues: (1) Inspectorate waived its objection to the trial court's order granting Moring's special appearance, and (2) Moring is not subject to personal jurisdiction in Texas.

**A. Did Inspectorate waive its right to seek reconsideration of the order granting Moring's special appearance?**

Moring asserts that Inspectorate waived its objection to the trial court's ruling on his special appearance by failing to take an interlocutory appeal from

4

the order granting the special appearance. The Supreme Court of Texas has not addressed this issue, and intermediate appellate courts in Texas are split as to whether a party waives its right to appellate review of an order granting or denying a special appearance if it fails to file an interlocutory appeal of that order. Some courts find waiver when a party fails to take an immediate appeal. *See, e.g., GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 866–67 (Tex. App.—Austin 2008, no pet.); *Matis v. Golden*, 228 S.W.3d 301, 305 (Tex. App.—Waco 2007, no pet.) (holding a party waives its right to appellate review by failing to immediately appeal a special appearance order). But, we do not. Under our precedent, a party does not waive its right to appellate review of an order granting or denying a special appearance by failing to take an interlocutory appeal of that order. *See DeWolf v. Kohler*, 452 S.W.3d 373, 383 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Even if Inspectorate had waived appellate review of the trial court's initial order granting Moring's special appearance, that waiver would not prohibit the trial court from reconsidering its initial order. And, that is precisely what happened. A trial court holds plenary power over its judgment until the judgment becomes final. *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993) (per curiam). A party's failure to file an interlocutory appeal from an interlocutory order does not make that order final. *See Lehman v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001). The trial court holds continuing authority to reconsider its interlocutory orders while it has plenary power over the case. *See Fruehauf*, 848 S.W.2d at 84.

Moring has not cited any authority suggesting Inspectorate waived its ability to ask the trial court to reconsider the denial of Moring's special appearance while the trial court had plenary power over the case. The order granting Moring's special appearance was interlocutory because it did not resolve

5

all claims between and among all parties, so the trial court still held plenary power over the case when it reconsidered its order granting the special appearance. *See Lehman*, 39 S.W.3d at 206; *Fruehauf*, 848 S.W.3d at 84. The trial court had plenary power to issue the order denying Moring's special appearance and Inspectorate did not waive its right to ask the trial court to reconsider. *See Fruehauf*, 848 S.W.2d at 84. We overrule Moring's first issue.

**B. Does the trial court have personal jurisdiction over Moring?**

In Moring's second issue, he asserts the trial court erred in denying his special appearance.

*Standard of Review*

Whether Moring is subject to personal jurisdiction in Texas is a question of law, which we review de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, — S.W.3d — ,—, 2017 WL 889938, at *5 (Tex. Mar. 3, 2017).

The exercise of personal jurisdiction in Texas state courts turns on both federal and state law. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). Courts may exercise personal jurisdiction over a defendant when (1) the Texas long-arm statute grants jurisdiction, and (2) the exercise of jurisdiction comports with federal and state constitutional guarantees of due process. *Id.* The long-arm statute allows Texas courts to exercise personal jurisdiction as far as the federal constitutional requirements of due process will permit, so Texas courts may exercise personal jurisdiction as long as doing so comports with federal constitutional guarantees of due process. *Id.*

6

The long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who contracts with a Texas resident or commits a tort "in whole or in part" in this state. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1), (2) (West, Westlaw through 2015 R.S.). The plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction under the long-arm statute. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). Inspectorate met this initial burden. So, the burden then shifted to Moring to negate all potential bases for personal jurisdiction. *See id.*

A trial court's exercise of personal jurisdiction comports with due process when (1) the defendant has established minimum contacts with the forum state and (2) asserting personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Searcy*, 496 S.W.3d at 66. A defendant's contacts with the forum may give rise to either general or specific jurisdiction. *M&F Worldwide Corp.*, 2017 WL 889938, at *5. Specific jurisdiction exists when the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575–76 (Tex. 2007). For Moring's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between Moring's purposeful contacts with Texas and the operative facts of the litigation. *See. id*. at 585. If we determine Moring had sufficient minimum contacts with Texas and the contacts are substantially connected to the operative facts of the litigation, we must ensure the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Fjell Tech. Grp. v. Unitech Int'l, Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *9 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (mem. op.).

7

*Jurisdictional Allegations and Evidence*

In its live petition, Inspectorate makes the following allegations:

- Moring is a resident of Calcasieu Parish, Louisiana.

- Moring is amenable to service of process in Texas because he entered into a contract with Inspectorate and both parties are to perform all or part of the contract in Texas. Therefore, Moring engaged in business in Texas and this lawsuit arises out of that business.

- In April 2012, Inspectorate acquired Waterdraws, LLC, a Louisiana company engaged in the business of providing prover inspection, prover reconditioning, and waterdraw calibration services.

- Moring was a supervisor for Waterdraws, LLC before the acquisition and stayed on after the acquisition.

- During Moring's employment with Inspectorate, Inspectorate gave Moring access to its confidential, proprietary, and trade secret information, including information regarding customer pricing, rates, contacts, preferences, needs, and inventory, bid/quotes, marketing, budgets, sales, employee compensation, technology, and other commercial and operational information.

- Moring signed a confidentiality agreement as a condition of his employment. The agreement prohibited Moring from disclosing Inspectorate's confidential information, using the confidential information for himself or anyone else, and removing any records containing confidential information.

- Moring resigned from employment in December 2015, and began working for Inspectorate's competitor, Intertek.

- Moring took confidential information upon his departure from Inspectorate.

- Moring is using and/or disclosing Inspectorate's confidential information by continuing to perform the exact same services on behalf of Intertek for the exact same customers he serviced while employed by Inspectorate.

Moring attached evidence to his special appearance including an affidavit in which Moring made the following averments:

8

- Moring was an at-will employee of Inspectorate.

- Moring does not have an agent for service in Texas.

- Moring did not engage in business in Texas while he was employed by Inspectorate except as an employee of Inspectorate and Moring has not engaged in any business in Texas since leaving Inspectorate except as an employee of Intertek.

- Moring did not engage in the conduct Inspectorate complained of in its live petition.

- Moring denied committing any torts in Texas.

In its response to Moring's special appearance, Inspectorate presented evidence showing the following:

- Moring lived in Texas while working for Inspectorate between 2012 and 2014.

- While working for Inspectorate, Moring performed waterdraw calibrations on behalf of numerous Texas-based customers including ExxonMobil and Centurion Pipeline.

- After leaving Inspectorate, and while working for Intertek, Moring performed waterdraw calibrations for ExxonMobil and Centurion Pipeline in Texas.

- While working for Inspectorate, Moring performed pipe prover inspections for two customers, including Magellan. While working for Intertek, Moring performed a pipe prover inspection in Texas for Magellan.

- While working for Inspectorate, Moring prepared bids and generated quotes for customers including ExxonMobil and Magellan. While working for Intertek, Moring also prepared bids and generated quotes for Texas customers including ExxonMobil and Magellan.

- Moring contacted ExxonMobil and Magellan to bid for work while working for Intertek.

- Moring made a sales call to JP Energy in Barnhart, Texas, to solicit work for Intertek.

- Moring discussed base pricing of products/services with representatives of Texas-based Centurion.

9

*Foreseeability and Purposeful Availment*

Although not determinative, foreseeability stands as an important consideration in deciding whether Moring purposefully availed himself of the privilege of conducting activities within Texas. *See BMC Software*, 83 S.W.3d at 795. Moring should not be subject to the jurisdiction of Texas courts based upon random, fortuitous, or attenuated contacts. *See id.* In the context of specific jurisdiction, the following principles guide a purposeful-availment inquiry: (1) the relevant contacts are those of the defendant, and the unilateral activity of another person or a third party is not pertinent; (2) the contacts that establish purposeful availment must be purposeful rather than random, fortuitous, isolated, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction. *Moki Mac River Expeditions*, 221 S.W.3d at 575. In conducting the minimum-contacts analysis, we focus on the quality and nature of the defendant's contacts rather than the number. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009).

Moring worked in Texas for two years, performing work for a number of customers. After returning to Louisiana, Moring reached out to Texas customers to solicit business opportunities. Moring returned to Texas to conduct the business. Because Moring initiated contact with Texas customers and then traveled to Texas to perform work for those customers in Texas, the trial court reasonably could have concluded that Moring's contacts with Texas were purposeful, and not random or fortuitous. *See id.* This court held in *Fjell* that nonresident parties purposefully contacted Texas when they initiated contact with Texas by sending marketing emails into Texas and communicated via a video-conferencing application, e-mail, and in-person meetings with Texas-based employees. *See* 2015 WL 457805, at *6. Similarly, Moring initiated contact with

Texas customers to get business from those customers. Moring profited from these contacts when he actually landed the business and came to Texas to get the work done. Based on these facts, the trial court reasonably could have found foreseeability, concluding that Moring could have anticipated that any disputes arising out of or related to his Texas contacts might be heard by a Texas court. *See id.* at \*7.

In determining that Moring has sufficient minimum contacts with Texas, we reject as misplaced Moring's argument that Inspectorate did not provide any evidence that Moring actually did anything wrong. Moring cites *RSM Prod. Corp. v. Global Petroleum Group, Ltd.* and *Baker Hughes Inc. v. Homa* and for the proposition that Inspectorate had to provide evidence of Moring's bad acts to show the nexus between the facts of the claims and Moring's contacts with Texas. *See RSM Production Corp. v. Global Petroleum Grp, Ltd.*, 507 S.W.3d 383 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Baker Hughes, Inc. v. Homa*, No. H-11-3757, 2013 WL 5775636 (S.D. Tex. Oct. 25, 2013). Neither *Baker Hughes* nor *RSM* are binding precedents on this court. *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781 n.8 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). We distinguish both cases.

In *RSM*, our Houston sister court held that the defendant, Global, was not subject to Texas jurisdiction because "RSM did not allege any facts or adduce any evidence indicating Global acquired [the alleged trade secret] in Texas. In fact, Global's unrebutted jurisdictional evidence established that Global obtained [the alleged trade secret] from the Grenadian government in Grenada." *See RSM*, 507 S.W.3d at 394. Accordingly, the *RSM* court concluded that "to the extent the defendant committed a tort . . . . no pleadings or evidence" indicated that it occurred "even in part" in Texas. *See id.* In rejecting the plaintiff's argument that

the "subject-matter" of the defendant's contractual relationships with third-parties required the defendant to disseminate trade secrets, the *RSM* court concluded that jurisdictional evidence showed that the defendant's contacts with the third parties did not involve the alleged trade secrets. *See id.* The *RSM* court concluded that the analysis of these contacts was not an argument on the merits. Unlike in *RSM*, where the appellate court analyzed the contacts with the third parties to see if those contacts involved the data in question, our record shows that Moring contacted Texas entities and that the subject of those contacts related to the allegedly misappropriated information.

In *Baker Hughes*, the plaintiff alleged that former employees misappropriated trade secrets and used those trade secrets to formulate a quote sent to a Texas company. *See* 2013 WL 5775636, at *9. The federal district court found the court lacked personal jurisdiction over two defendant entities because the employees were acting on behalf of another entity when the former employees sent the quote. *See id.* at *15. The federal district court stated that even if the former employees had been acting on behalf of the defendant, the record did not contain evidence that the former employees used the trade secrets in formulating the quote. *See id.* Even if this statement is an alternative holding, the federal district court in *Baker Hughes* was following the federal procedural rules to determine how proof of sufficient contacts must be made. *See id.* at *10. Although Texas courts use the federal due-process standard in analyzing minimum contacts, Texas courts do not use the federal procedural rules in determining how the proof must be made. *Clark v. Noyes*, 871 S.W.2d 508, 511 (Tex. App.—Dallas 1994, no pet.). In federal court, the plaintiff shoulders the burden of presenting a prima facie showing of personal jurisdiction. *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012). By contrast, in Texas state court, once the plaintiff pleads sufficient allegations to satisfy the long-arm

12

statute, the defendant shoulders the burden of proving the lack of personal jurisdiction. *See Moncrief*, 414 S.W.3d at 149. In *Baker Hughes*, the plaintiff did not meet its burden to make a prima facie showing of jurisdiction. *See* 2013 WL 5775636, at *10. In today's case, Moring had the burden to negate jurisdiction because Inspectorate pled allegations sufficient to bring the case within the scope of the long-arm statute. *See Moncrief*, 414 S.W.3d at 149.

At this stage in the litigation, we do not ask merits-of-the-case questions such as whether Inspectorate has shown that Moring breached a contract, misappropriated confidential information, or committed any of the conduct alleged in the petition. *See Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 73 (Tex. 2016); *Fjell*, 2015 WL 457805, at *7 (stating, "[w]e also reject [the nonresident defendant's] argument that the evidence is insufficient to prove they committed the torts alleged by [the plaintiff]. The argument relates to the merits of [the plaintiff's] claims . . . . We cannot consider the merits of [the plaintiff's] claims at the jurisdictional stage"). Instead, our focus is on the Texas contacts and their connection to Inspectorate's allegations.

*Relationship Between Claims and Forum Contacts*

While specific jurisdiction might require us to analyze jurisdictional contacts on a claim-by-claim basis, we need not do so if all of the claims arise from the same forum contacts. *See Moncrief*, 414 S.W.3d at 150–51; *Yujie Ren v. Anu Res., LLC*, 502 S.W.3d 840, 849 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Inspectorate has asserted claims against Moring for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, tortious interference with contract, civil conspiracy, unjust enrichment, and unfair competition. Inspectorate claims Moring:

(1) breached his contract by disclosing or inevitably disclosing confidential information,

 (2) misappropriated trade secrets by using or disclosing, or threatening to use or disclose, trade secrets,

 (3) breached his fiduciary duty of confidence by using and disclosing confidential information, and breached his fiduciary duty of loyalty while still employed by Inspectorate by conspiring and making plans to compete with it using its own confidential information,

(4) tortiously interfered with relationships by inducing customers to leave Inspectorate using trade secrets and confidential information,

(5) engaged in a civil conspiracy to misappropriate trade secrets and compete unfairly,

(6) obtained unjust enrichment from the conduct asserted in the petition, and

(7) engaged in unfair competition by conducting himself in an illegal and tortious way.

In the trial court and in their appellate briefs, both parties treat these claims as arising from the same forum contacts. In its live pleading, Inspectorate pled the jurisdictional facts listed above and then asserted its claims. Moring addressed all of Inspectorate's claims together in his special appearance as did Inspectorate in its response to the special appearance. Each of Inspectorate's claims stems from allegations that Moring improperly obtained and used Inspectorate's confidential information or made plans to improperly obtain and use Inspectorate's confidential information to compete with Inspectorate. Under these circumstances, we need not analyze Moring's minimum contacts on a claim-by-claim basis. *See Moncrief*, 414 S.W.3d at 150–51; *Yujie Ren*, 502 S.W.3d at 849.

We must determine whether Inspectorate's claims arise from or relate to Moring's purposeful contacts with Texas. *Moki Mac River Expeditions*, 221 S.W.3d at 575–76. This standard requires "a substantial connection between

14

those contacts and the operative facts of the litigation." *Id*. at 585. Inspectorate alleges that Moring breached his employment contract and his fiduciary duty by using and disclosing Inspectorate's confidential information, that Moring misappropriated Inspectorate's trade secrets by disclosing or threatening to disclose them, and that by doing so, Inspectorate engaged in unfair competition. Inspectorate also alleges that Moring colluded to take Inspectorate's trade secrets and interfered with Inspectorates' business relationships. The facts surrounding Moring's alleged use of Inspectorate's confidential information to get business in Texas from Texas consumers of Inspectorate's services comprise the crux of Moring's purposeful contacts with Texas and will be the focus of Inspectorate's claims against Moring at trial. We hold that these claims arise from or relate to Moring's purposeful Texas contacts and that these contacts have a substantial connection with the operative facts of the litigation. *See Cornerstone Healthcare Grp. Holding, Inc.*, 493 S.W.3d at 73–74; *Fjell*, 2015 WL 457805, at *7–9.

*Fair Play and Substantial Justice*

In evaluating whether exercising jurisdiction offends traditional notions of fair play and substantial justice, we consider: (1) the burden on the defendant, (2) the interests of the forum in adjudicating the dispute, (3) the plaintiff's interest in getting convenient and effective relief, (4) the international judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several nations in furthering fundamental substantive social policies. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010). The defendant must present a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Id.* Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant purposefully has established minimum contacts with

15

the forum state. *See Guardian Royal Exch. Assr., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex. 1991).

Moring argues that subjecting him to jurisdiction in Texas would burden him because he will have to travel. But, traveling burdens all nonresidents. *See Moncrief,* 414 S.W.3d at 155. Distance alone cannot defeat jurisdiction —at least not ordinarily. *Id.* Louisiana borders Texas and Moring has managed to come to neighboring Texas many times for work. The burden of litigating in Texas does not rise to the level of defeating jurisdiction. *See id.* Inspectorate's allegations that Moring committed torts in Texas against a Texas resident give Texas a vital interest in adjudicating the dispute. *See id.* Moring argues that Louisiana is a better forum for the plaintiff to get relief. He claims Louisiana allows for the most efficient resolution of controversies because Inspectorate could sue all parties in Louisiana. But, Inspectorate chose to file suit in Texas and Texas is a convenient forum for a Texas plaintiff. *See Barker v. Lescroart,* No. 14-06-00125-CV, 2007 WL 445282, at *6 (Tex. App.—Houston [14th Dist.] Feb. 13, 2007, no pet.) (mem. op.). After weighing all the relevant factors, we conclude that exercising personal jurisdiction over Moring would not offend traditional notions of fair play and substantial justice. *See Moncrief,* 414 S.W.3d at 155.

Inspecrorate's claims arise from or relate to Moring's purposeful Texas contacts, and a substantial connection exists between these contacts and the operative facts of the litigation. *See Fjell,* 2015 WL 457805 at *7–9. Exercising personal jurisdiction over Moring does not offend traditional notions of fair play and substantial justice. *See Moncrief,* 414 S.W.3d at 155. For these reasons, the trial court did not err in denying Moring's special appearance. We overrule

Moring's second issue.

## CONCLUSION

Inspectorate did not waive its right to ask the trial court to reconsider the interlocutory order granting Moring's special appearance, so Moring's waiver argument affords no basis for appellate relief. Because Texas courts may exercise personal jurisdiction over Moring in this case, the trial court did not err in reconsidering its order granting Moring's special appearance and denying the special appearance. Having found no error, we affirm the trial court's denial of Moring's special appearance.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.