**Affirmed and Memorandum Majority and Concurring Opinions filed September 21, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00031-CV

---

## RDF AGENT, LLC, RELATED FUND MANAGMENT, LLC, AND BRIAN SEDRISH, Appellants

### V.

## ELECTRIC RED VENTURES, LLC, MANFRED CO. L.C., AND MONZER HOURANI, Appellees

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2022-20609**

---

## M E M O R A N D U M   M A J O R I T Y   O P I N I O N

Appellees Electric Red Ventures, LLC, Manfred Co. L.C., and Monzer Hourani (collectively, the "Electric Appellees") sued appellants RDF Agent, LLC, Related Fund Management, LLC, and Brian Sedrish (collectively, the "RDF Appellants"), asserting claims for fraud and conspiracy to commit fraud. The Electric Appellees also requested a declaratory judgment with respect to the

parties' rights and obligations under a loan term sheet.

The trial court denied the RDF Appellants' special appearances and Appellants filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). For the reasons below, we affirm.

## BACKGROUND

This case centers on a financing arrangement, the inception of which occurred at a business meeting in Houston. Before delving into the transaction's intricacies, we begin with an overview of the parties and their business relationships.

- Non-party Medistar Corporation specializes in developing and financing multi-use real estate projects. Medistar is headquartered in Houston and was founded by appellee Monzer Hourani.

- Medistar is the parent company of appellee Electric Red Ventures, LLC. Electric Red Ventures is organized under Arizona law and maintains its principal place of business in Arizona. Appellee Monzer Hourani is the CEO of Electric Red Ventures.

- Appellee Manfred Co. L.C. is a Texas limited liability company with its principal place of business in Houston. Appellee Monzer Hourani is also the CEO of Manfred Co.

- Appellant Related Fund Management, LLC is a real estate investment manager that works on behalf of third-party clients and affiliated investment funds to identify and manage commercial real estate ventures. Related Fund Management is organized under Delaware law and maintains its principal place of business in New York.

- After an investment opportunity is identified, appellant RDF Agent, LLC negotiates the term sheet and other loan documents and acts as a servicer on certain loans. RDF Agent is a Delaware company with its principal place of business in New York.

- Appellant Brian Sedrish is a managing director of appellant Related Fund Management and an authorized signatory for appellant RDF Agent. Sedrish has acted as a representative for both companies.

2

In April 2021, Sedrish was approached by a real estate broker to explore the possibility that RDF Agent or its affiliates would lend Medistar or its affiliates approximately $230 million to develop a multifamily real estate project in Arizona. Sedrish traveled to Texas approximately two months later to meet with Medistar executives.

After arriving in Houston, Sedrish "took the opportunity to tour the various projects Medistar and its affiliates have there." One of these projects was a Best Western hotel Medistar owned near the Texas Medical Center.

After the conclusion of the tour, Sedrish met with Monzer Hourani, Gino Hourani, and other Medistar executives "for about an hour to discuss potential business between Medistar and [Related Fund]." Gino Hourani described the meeting as follows:

> During [the] meeting, Mr. Sedrish said that his company had strong relationships with equity sources and would help us secure the equity we needed to proceed with [the multifamily real estate project in Arizona]. At the meeting, we also discussed other projects in Houston, including the Best Western hotel in the Houston Medical Center.

After the conclusion of the meeting, the parties continued to communicate regarding the Summary of Indicative Loan Terms and Conditions (the "Term Sheet"), which set out the proposed loan terms for the Arizona project. The Term Sheet was executed on July 23, 2021, and the Electric Appellees paid RDF Agent a $350,000 due diligence deposit.

Appellee Monzer Hourani signed the Term Sheet (1) as CEO of Electric Red Ventures, the "Borrower," (2) as CEO of Manfred Co., a "Guarantor," and (3) in his individual capacity as a second "Guarantor." Sedrish signed the Term Sheet as Managing Director for RDF Agent. The Term Sheet also includes a "Right of First

3

Refusal" which states:

> Agent[ ] shall be granted . . . a Right of First Refusal ("ROFR") to provide financing for the Medistar Best Western Medical site located in Houston, TX. Terms for the ROFR shall be defined in the definitive Loan agreement.

In March 2022, RDF Agent's attorney sent a demand letter to the Electric Appellees. Asserting that the Electric Appellees have "consistently delayed the progress of the transaction described in the Term Sheet," the letter alleges that Appellees committed two breaches of its terms: (1) "failing to timely secure the equity for the Project necessary to close the Loan," and (2) breaching the Term Sheet's exclusivity provision by "pursu[ing] or contact[ing] persons other than Agent in respect of financing the Project." The letter demands liquidated damages in the amount of $2.3 million and RDF Agent's out-of-pocket costs, which totaled $350,000.

The Electric Appellees sued the RDF Appellants approximately one month later. In their live pleading, the Electric Appellees assert the following claims and supporting allegations:

- Fraud: The Electric Appellees assert that the RDF Appellants fraudulently misrepresented that they (1) would assist Appellees in locating and securing equity as required by the Term Sheet, and (2) would not enforce the Term Sheet's liquidated damages provision.

- Conspiracy to commit fraud: The Electric Appellees allege that the RDF Appellants "fraudulently misrepresent[ed] facts to induce [Appellees] to execute the Term Sheet."

- Declaratory judgment: The Electric Appellees also request declaratory relief with respect to the parties' rights and obligations under the Term Sheet, including that (1) Appellees did not breach their obligations under the Term Sheet's exclusivity provision, (2) RDF Agent did not suffer any harm from the parties' failure to enter into a loan agreement, and (3) the term sheet's liquidated damages provision is an unenforceable penalty.

4

The RDF Appellants filed special appearances and attached evidence. The Electric Appellees responded and included additional evidence. The trial court signed an order denying the RDF Appellants' special appearances. The RDF Appellants filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

## ANALYSIS

On appeal, the RDF Appellants assert that the trial court erred in denying their special appearances because their contacts in Texas do not support an exercise of general or specific personal jurisdiction. The RDF Appellants also argue that an exercise of jurisdiction is contrary to principles of fair play and substantial justice.

## I. Governing Law and Standard of Review

### A. Personal Jurisdiction Principles

An exercise of personal jurisdiction in Texas state courts turns on an application of both federal and state law. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). Specifically, Texas courts may exercise personal jurisdiction over a nonresident defendant if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see also Watamar Holding S.A. v. SFM Holdings, S.A.*, 583 S.W.3d 318, 326 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The Texas long-arm statute extends personal jurisdiction over a nonresident defendant who does business in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The Legislature has delineated a non-exclusive list of acts that may

5

constitute "doing business" in this state, including (1) "contract[ing] by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part" in Texas, (2) "commit[ting] a tort in whole or in part" in Texas, or (3) "recruit[ing] Texas residents, directly or indirectly or through an intermediary located in [Texas], for employment inside or outside the state." *Id.*

The Texas Supreme Court has repeatedly interpreted this statutory language to reach as far as the federal constitutional requirements of due process will allow. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due-process limitations. *See Retamco Operating, Inc.*, 278 S.W.3d at 337-38 ("Therefore, we only analyze whether [the nonresident defendant's] acts would bring [it] within Texas's jurisdiction consistent with constitutional due process requirements.").

Personal jurisdiction over a nonresident defendant is consistent with federal and state constitutional due-process guarantees when (1) the defendant has established minimum contacts with the forum state, and (2) asserting personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Searcy*, 496 S.W.3d at 66; *Wormald v. Villarina*, 543 S.W.3d 315, 320 (Tex. App.—Houston [14th Dist.] 2017, no pet.). This "minimum contacts" analysis can support two distinct types of personal jurisdiction: specific or general. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

## B.    Standard of Review and Shifting Burdens of Proof

A nonresident defendant may file a special appearance to challenge the trial court's exercise of personal jurisdiction. *See* Tex. R. Civ. P. 120a; *see also*

6

*Wormald*, 543 S.W.3d at 319. The trial court determines a special appearance "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a.

The plaintiff bears the initial burden of pleading sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Watamar Holding S.A.*, 583 S.W.3d at 326. If the plaintiff fails to plead facts bringing the defendant within reach of the Texas long-arm statute, the defendant need only prove that he does not live in Texas to negate jurisdiction. *Kelly*, 301 S.W.3d at 658.

If the plaintiff meets its initial burden, the burden of proof then shifts to the defendant to negate all alleged bases of jurisdiction. *Retamco Operating, Inc.*, 278 S.W.3d at 337; *see also Kelly*, 301 S.W.3d at 658 ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."). The plaintiff can then respond with its own evidence that affirms its allegations. *Phillips Dev. & Realty, LLC v. LJA Eng'g, Inc.*, 499 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The nonresident defendant can negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659; *Hoagland v. Butcher*, 474 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Factually, the defendant can present evidence that it has no contacts with Texas, thereby disproving the plaintiff's allegations. *Kelly*, 301 S.W.3d at 659. Legally, the defendant can show that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful

7

availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*.; *see also Hoagland*, 474 S.W.3d at 810. The plaintiff can respond with evidence that affirms its allegations, and it risks dismissal of its claims if it cannot present evidence establishing personal jurisdiction. *Kelly*, 301 S.W.3d at 659.

On appeal, the scope of review in a special appearance case includes all evidence in the record. *Phillips Dev. & Realty, LLC*, 499 S.W.3d at 85. We do not address the merits of the lawsuit when we review an order denying a special appearance. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 791-92.

The existence of personal jurisdiction is a question of law that sometimes is preceded by the resolution of factual disputes. *Marchand*, 83 S.W.3d at 794; *Hoagland*, 474 S.W.3d at 811. Where, as here, the trial court did not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by evidence are implied. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). We presume the trial court resolved all factual disputes in favor of its judgment; credibility determinations are to be made by the trial court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *Watamar Holdings S.A.*, 583 S.W.3d at 325-26.

## II.    Application

Turning to the jurisdictional analysis, we begin by considering whether the Electric Appellees pleaded allegations sufficient to bring the RDF Appellants within the reach of Texas's long-arm statute. *See Kelly*, 301 S.W.3d at 658-60; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *Huynh v. Nguyen*, 180 S.W.3d 608, 619-20 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("This minimal pleading requirement is satisfied by an allegation that the nonresident defendants

are doing business in Texas."). To determine whether the Electric Appellees satisfied this burden, we consider their pleadings as well as their response to the RDF Appellants' special appearances. *See Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We accept as true the allegations in Appellees' pleadings and response. *See Yujie Ren v. ANU Res., LLC*, 502 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

In their second amended petition, the Electric Appellees alleged that the RDF Appellants were "doing business" in Texas because they (1) purposefully availed themselves of the privileges and benefits of Texas, and (2) committed a tort in whole or in part in Texas. The Electric Appellees pleaded the following jurisdictional facts to support these allegations:

- Appellant Sedrish traveled to Houston to meet with Medistar representatives to discuss the multifamily real estate project in Arizona.

- Sedrish attended this meeting in his capacity as an employee of appellant Related Fund Management and as an agent and authorized signatory of appellant RDF Agent.

- Sedrish, "on behalf of RDF Agent and Related Fund Management," fraudulently represented that the RDF Appellants would help Medistar "locate equity partners to fulfill the terms of the proposed loan term sheet."

- RDF Agent executed the Term Sheet with the Electric Appellees on July 23, 2021.[1] The Electric Appellees remitted to RDF Agent a

---

[1] For the purposes of examining jurisdiction, we will assume without deciding that this is a valid contract. We express no opinion as to the validity or enforceability of the Term Sheet. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 791-92 (courts do not address the merits of the lawsuit when reviewing an order denying a special appearance); *see also, e.g., Concord Energy, LLC v. VR4-Grizzly, LP*, No. 05-21-01126-CV, 2022 WL 17101034, at *6 (Tex. App.—Dallas Nov. 22, 2022, no pet.) (mem. op.) (concluding that the question of whether an agreement was "valid and enforceable" was "a question regarding the merits" and thus outside the "scope of review"); *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 835 n.3 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("For purposes of our analysis, we assume without deciding that a valid contract exists.").

9

$350,000 due diligence deposit.

Satisfying their initial burden, the Electric Appellees pleaded sufficient jurisdictional facts to support their allegations that the RDF Appellants' conduct falls within Texas's long-arm statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *see also, e.g.*, *Dresser-Rand Grp., Inc. v. Centauro Cap., S.L.U.*, 448 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("The [plaintiffs] satisfied their initial burden by alleging that the [defendants] were doing business in Texas within the meaning of section 17.042(1) of the Texas Civil Practice and Remedies Code."); *Huynh*, 180 S.W.3d at 619-20 ("Because [the plaintiff] pleaded in its petition in intervention that [the defendant] conducted business in Texas and committed torts in Texas, [the plaintiff] satisfied this pleading requirement.").

Accordingly, the burden shifted to the RDF Appellants to negate all the bases of jurisdiction alleged by the Electric Appellees. To determine whether this burden was met, we analyze the RDF Appellants' contacts under the due process jurisdictional framework and examine whether (1) Appellants established minimum contacts with Texas, and (2) asserting personal jurisdiction over Appellants offends traditional notions of fair play and substantial justice. *See Searcy*, 496 S.W.3d at 66; *Wormald*, 543 S.W.3d at 320.

## A.    Minimum Contacts

Under a specific personal jurisdiction analysis, a defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc.*, 278 S.W.3d at 338. Essentially, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to the forum state are such that it could anticipate being

haled into a court there. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 152 (Tex. 2013). This analysis uses a three-pronged approach: (1) only the defendant's contacts with the forum state are relevant — not the unilateral activity of someone else; (2) whether those contacts are purposeful rather than random, fortuitous, or attenuated; and (3) whether the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction. *Moki Mac River Expeditions*, 221 S.W.3d at 575; *Yujie Ren*, 502 S.W.3d at 848. We focus on the quality and nature of the contacts, rather than the quantity. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 151.

In addition to the purposeful availment analysis, we must determine whether the Electric Appellees' claims arise from or relate to the RDF Appellants' purposeful contacts with Texas. *See Moki Mac River Expeditions*, 221 S.W.3d at 575-76; *Moring v. Inspectorate Am. Corp.*, 529 S.W.3d 145, 155 (Tex. App.— Houston [14th Dist.] 2017, pet. denied). This standard requires "a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac River Expeditions*, 221 S.W.3d at 585.

Here, the evidence supports the trial court's implied finding that the RDF Appellants purposefully availed themselves of the privilege of conducting activities within Texas such that they could anticipate being haled into court in the state:

- In his declaration, Gino Hourani (the vice president of development at Medistar) said he met with appellant Sedrish in Houston to discuss financing real estate projects. Hourani stated that, during this meeting, Sedrish represented that "his company . . . would help us secure the equity we needed to proceed with a real estate project." This alleged misrepresentation is one of the two that form the basis of the Electric Appellees' fraud claim.

11

- After this meeting, the parties continued to communicate about the conditions of the Term Sheet, including substantial revisions to its terms.

- These communications culminated in an executed Term Sheet.

- At his deposition, Sedrish said he initially was acting as a representative for Related Fund Management in determining whether to source Medistar's proposed multifamily real estate project in Arizona. Sedrish said that when the Term Sheet was being negotiated and signed, he was acting for RDF Agent.

- Sedrish also discussed traveling to Texas for the 2021 meeting with Medistar executives. Sedrish said he did not meet with any other companies regarding sourcing new transactions on this trip.

- Sedrish said that, while he was in Texas, the Medistar representatives took him to tour their local assets.

- After the tour, Sedrish had lunch with Medistar representatives, including Gino and Monzer Hourani.

- When asked what was discussed during this meeting with the Medistar representatives, Sedrish repeatedly stated he did "not recall."

- Sedrish said he traveled to Texas "hoping to possibly source a deal with [the Electric Appellees]" in his capacity as "a representative of Related Fund."

- Sedrish acknowledged that RDF Agent is the "only agent" that ever worked as a loan servicer for Related Fund.

This evidence supports the conclusion that Sedrish, while working as a representative for Related Fund Management and RDF Agent, purposefully availed himself of the privilege of conducting activities in Texas for business purposes. *See, e.g.*, *Max Protetch, Inc.*, 340 S.W.3d at 886 ("purposeful availment" shown with "regular communication between [the parties], including a face-to-face meeting in Houston during which [appellant] allegedly made misrepresentations inherently related to the contract and which could support a separate cause of

action in tort"); *ERC Midstream LLC v. Am. Midstream Partners, LP*, 497 S.W.3d 99, 110 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (reversing order granting special appearance because individual came to Texas, met with plaintiff to acquire business, and allegedly made representation forming the basis of the fraud claim). Specifically, this evidence shows that the RDF Appellants made numerous purposeful contacts in the state of Texas for the purpose of obtaining future benefits or profits. *See Moki Mac River Expeditions*, 221 S.W.3d at 575; *Yujie Ren*, 502 S.W.3d at 848.

The evidence also shows a substantial connection between the RDF Appellants' contacts in Texas and the operative facts of the litigation. The Electric Appellees' fraud and conspiracy to commit fraud claims allege that Sedrish (while representing Related Fund Management and RDF Agent) made misrepresentations at the Texas meeting regarding whether he would assist Appellees in finding equity sources for the transaction. This meeting in Texas (and the alleged misrepresentations made at the meeting) culminated in the parties signing the Term Sheet, the conditions of which the Electric Appellees seek to clarify via declaratory judgment. These Texas contacts therefore are substantially connected to the operative facts of the litigation. *See Moki Mac River Expeditions*, 221 S.W.3d at 585.

Asserting that they lack the minimum contacts necessary to establish specific personal jurisdiction in Texas, the RDF Appellants raise two arguments.

First, the RDF Appellants argue that any misrepresentations at the Texas meeting were made to "representatives of Medistar, a non-party." These non-party contacts, Appellants assert, "cannot serve as the basis for specific jurisdiction."

We disagree. As mentioned above, our specific personal jurisdiction analysis focuses on the ***defendants'*** contacts with the forum state — not the plaintiff's. *See id*. at 575. Moreover, the evidence before the trial court supports

13

the implied finding that Sedrish's representations at the Texas meeting were made to the Electric Appellees. At his deposition, Sedrish stated that he had lunch with both Gino and Monzer Hourani during his trip to Houston. After this meeting and the conclusion of the subsequent Term Sheet negotiations, Monzer Hourani signed the Term Sheet in three capacities: (1) as CEO of appellee Electric Red Ventures, the "Borrower," (2) as CEO of appellee Manfred Co., a "Guarantor," and (3) in his individual capacity as a second "Guarantor." Monzer Hourani, Electric Red Ventures, and Manfred Co. are all parties to this litigation. Accordingly, the evidence supports the conclusion that a substantial connection exists between the RDF Appellants' Texas contacts and the claims asserted by the Electric Appellees.

In their second argument, the RDF Appellants assert that the Term Sheet, standing alone, is insufficient to support an extension of specific personal jurisdiction with respect to appellee RDF Agent. But RDF Agent's contacts with Texas extend beyond the Term Sheet.

At his deposition, Sedrish emphasized that there is a distinction between his work with Related Fund Management and RDF Agent. Sedrish stated that, as a representative of Related Fund Management, he determines whether to fund a specific transaction; but when the Term Sheet was being negotiated and signed, he was acting for RDF Agent. Sedrish repeatedly stated that he came to Texas only as a representative of Related Fund Management to determine whether to fund the Electric Appellees' proposed transaction.

However, according to Gino Hourani's affidavit, the parties negotiated the Term Sheet's conditions at the Texas meeting, including whether the RDF Appellants would assist in securing equity sources for the project. Resolving all factual disputes in favor of the trial court's ruling (*see Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806), this evidence supports the implied finding that

14

Sedrish acted as a representative of RDF Agent at the Texas meeting when he discussed the Term Sheet's conditions with Gino and Monzer Hourani. Therefore, RDF Agent's contacts with the forum state extend beyond the Term Sheet itself. As we discussed above, these contacts are sufficient to support an extension of specific personal jurisdiction with respect to all three RDF Appellants.

In sum, we conclude the RDF Appellants established minimum contacts in Texas sufficient for an extension of specific personal jurisdiction.

## B.     Traditional Notions of Fair Play and Substantial Justice

The RDF Appellants also assert that exercising jurisdiction is contrary to fair play and substantial justice.

For this analysis, we consider:  (1) the burden on the defendants; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in getting convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversies; and (5) the shared interests of the several states in furthering fundamental substantive policies. *Retamco Operating, Inc.*, 278 S.W.3d at 341; *Moring*, 529 S.W.3d at 156.  "When the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice."  *Yujie Ren*, 502 S.W.3d at 851.  The defendant bears the burden of presenting a compelling case that the presence of some consideration would render an exercise of jurisdiction unreasonable.  *Dodd v. Savino*, 426 S.W.3d 275, 287 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

To support their contention that an exercise of personal jurisdiction is improper in these circumstances, the RDF Appellants argue that (1) the Term Sheet is governed by New York law; (2) appellants Related Fund Management and RDF

Agent are New York companies, and Sedrish is a Florida resident; and (3) the parties already are engaged in litigation in New York. The RDF Appellants also point out that, in the New York proceeding, the trial court dismissed with prejudice the Electric Appellees' fraud counterclaims.

But these arguments do not present a compelling case that an exercise of personal jurisdiction would be unreasonable. First, the burden of litigating here is not so great as to defeat jurisdiction given that (1) Sedrish (while representing Related Fund Management and RDF Agent) attended a business meeting in Texas and negotiated the terms of a proposed financial transaction, (2) the parties engaged in ongoing communications regarding the financial transaction, and (3) the parties contracted for the possibility of ongoing Texas obligations, including the Term Sheet's right of first refusal with respect to the Best Western Medical Center hotel project. Moreover, Texas has an interest in resolving a dispute in which two of the three plaintiffs are Texas residents. *See Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 851 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("the state of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly disputes in which the defendant allegedly committed a tort in whole or in part in Texas").

Similarly, the New York litigation does not vitiate an extension of personal jurisdiction with respect to the RDF Appellants. As the RDF Appellants stated in their special appearances, the New York lawsuit was filed on May 28, 2022 — over a month after the Electric Appellees' original petition was filed in the underlying suit. Therefore, the second-filed New York proceeding will not render an exercise of jurisdiction unreasonable in this case.

Ultimately, we conclude this is not one of the rare cases in which exercising jurisdiction does not comport with fair play and substantial justice. *See Retamco*

16

*Operating, Inc.*, 278 S.W.3d at 341; *Moring*, 529 S.W.3d at 156.  Therefore, the trial court did not err in denying the RDF Appellants' special appearances.

## CONCLUSION

Having concluded the trial court properly may exercise personal jurisdiction over the RDF Appellants, we affirm the trial court's order denying Appellants' special appearances.


/s/
Meagan Hassan
Justice


Panel consists of Justices Jewell, Hassan, and Wilson (Jewell, J., concurring).